STAR–KIST FOODS, INC.,
Plaintiff-Appellee,

v.

P.J. RHODES & CO.,
Defendant-Appellant.

No. 83–6134.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1984.

Decided May 25, 1984.

Edward B. Gregg, Menlo Park, Cal., for defendant-appellant.

Andrew Baum, Nims, Howes, Collison & Isner, New York City, for plaintiff-appellee.

Before WALLACE and ALARCON, Circuit Judges, and MARQUEZ,* District Judge.

WALLACE, Circuit Judge:

One of the counts Star-Kist Foods, Inc. (Star-Kist) brought against P.J. Rhodes &

* Honorable Alfredo C. Marquez, United States District Judge, District of Arizona, sitting by

Company (Rhodes) sought cancellation of a trademark registration, under 15 U.S.C. §§ 1119 and 1064. The district court granted Star-Kist partial summary judgment resolving this issue and directed entry of a final judgment on that count pursuant to Federal Rules of Civil Procedure rule 54(b). We have jurisdiction over Rhodes's timely appeal from the partial judgment under 28 U.S.C. § 1291, *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), and affirm.

I

Star-Kist, a canner and seller of fish in the United States and abroad, has been fighting an extensive legal battle with Rhodes, an international merchandiser, over the ownership of a trademark for various canned products. The object of the dispute is the trademark ROSE BOWL and the sole subject of the cancellation motion on partial summary judgment was Rhodes's United States Trademark Registration No. 546,592. That registration covers the use of ROSE BOWL on several canned fruit and vegetable products, among others, as well as "canned shellfish" and "canned fish—namely tuna and salmon." A food wholesaler, Tiedemann & McMorran, Inc., was originally issued Registration No. 546,592, in 1951, and sold canned foods under it until 1963. After a series of assignments, Rhodes acquired No. 546,592 for canned fish in March 1981.

Meanwhile, pursuant to an agreement with Sun Harbor Industries (Sun Harbor) in late 1980, Star-Kist acquired the unregistered United States mark ROSE BOWL for canned sardines and mackerel, as well as the registration in the Republic of the Philippines. Through April 8, 1983, Star-Kist made over $800,000 in United States sales of canned fish under that ROSE BOWL mark and promoted ROSE BOWL canned mackerel to the trade through product bulletins.

designation.

Trouble erupted in August 1981, when Rhodes petitioned to cancel Star-Kist's Philippines registration of ROSE BOWL, relying on its assigned rights to No. 546,-592. In February 1982, Star-Kist filed the action containing the cancellation count. The action included other claims for false designation of origin and trademark infringement under the Lanham Act and California law. Rhodes counterclaimed. In June 1982, Star-Kist applied for its own United States registration of the ROSE BOWL trademark for canned mackerel and sardines.

■ Star-Kist successfully brought the partial summary judgment motion on the cancellation claim, and Rhodes appealed while the other claims went to trial. Star-Kist had moved for cancellation based on the asserted abandonment of No. 546,592 by Rhodes's predecessors and fraud by one of those predecessors in renewing the registration. Cancellation of registration is proper "when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed.Cir. 1984) (*Job's Daughters*). *See also Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1026 (C.C.P.A.1982) (*Lipton*). Rhodes raises on this appeal only the issue of whether Star-Kist "possesses standing to challenge the continued presence on the register of the subject registration." *Lipton*, 670 F.2d at 1026. We therefore deal with no issue going to whether a valid ground for cancellation exists.

## II

This appeal turns on whether summary judgment was properly granted on the issue of standing. "Summary judgment is proper if the pleadings and evidence submitted in support of the motion show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1253

(9th Cir.1982); Fed.R.Civ.P. 56(c). Once the party moving for summary judgment meets the initial burden of showing the absence of such a genuine issue, *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir.1980), the opponent must set forth specific facts showing there is one. Fed.R.Civ.P. 56(e); *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). Evidence raising a genuine issue of material fact is that which is enough "to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.1983), *quoting First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *see generally* Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 481 & n. 77 (1983), and we view that evidence in a light favorable to the opposing party. *Coca-Cola, Inc. v. Overland Co.*, 692 F.2d at 1253. Thus, our inquiry in this trademark battle is limited simply to assessing Rhodes's claim that a genuine issue of material fact exists as to whether Star-Kist has standing to petition for cancellation and to judging its view of the law.

A brief review of the current law of standing to cancel a federal trademark registration helps to pinpoint the necessary areas of factual inquiry. "A petition to cancel a registration of a mark ... may ... be filed by any person *who believes that he is or will be damaged* by the registration of a mark...." 15 U.S.C. § 1064 (emphasis added). Such a filing can be made "at any time if the registered mark ... has been abandoned, or its registration was obtained fraudulently." 15 U.S.C. § 1064(c).

■ Rhodes's argument that in order to have standing under section 1064 Star-Kist must prove that it would be damaged misapprehends the law. Proof of actual damage is only relevant, not requisite, to establishing standing. We agree with the Fed-

eral Circuit "that there is no requirement that damage be proved in order to establish standing...." *Job's Daughters,* 727 F.2d at 1092. *See also Selva & Sons, Inc. v. Nina Footwear, Inc.,* 705 F.2d 1316, 1325 (Fed.Cir.1983) (*Nina Footwear*) ("pleading and proof of damage ... are not necessary to establish standing."). Determining standing is "a threshold inquiry directed solely to establishing interest of the party," *Lipton,* 670 F.2d at 1028, guided by the policy that "the public interest is served ... in broadly interpreting the class of persons ... [allowed] ... to institute cancellation proceedings." *Id.* at 1030.

■ The Lanham Act requires only "that the cancellation petitioner plead and prove facts showing a 'real interest' in the proceeding in order to establish standing." *Job's Daughters,* 727 F.2d at 1092; *Rosso and Mastracco, Inc. v. Giant Food, Inc.,* 720 F.2d 1263, 1265 (Fed.Cir.1983). While "[n]o absolute test can be laid down for what must be proved," *Lipton,* 670 F.2d at 1028, a cancellation petitioner must show he is "more than an intermeddler" but rather has a personal interest, and that there is a "real controversy between the parties." *Id.,* at 1028–29. Thus, his "allegations alone do not establish standing." *Id.* The petitioner, instead, must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark. *E.g., id.* at 1029; *Tanners' Council of America, Inc. v. Gary Industries, Inc.,* 440 F.2d 1404, 1406, 58 CCPA 1201 (1971). *See generally* 4A Callman, *Unfair Competition, Trademarks and Monopolies* § 25.45 (4th ed. 1983). Interest assertions will vary with the facts surrounding each cancellation dispute and therefore, a petitioner's standing must be scrutinized case-by-case. Examples of what courts have countenanced as reasonable bases are: an assertion of "a likelihood of confusion [between the petitioner's mark and the registered mark at issue] which is not wholly without merit, ... or ... a rejection of an application during prosecution," *Lipton,* 670 F.2d at 1029

(also citing other examples of real interests). *See also Nina Footwear,* 705 F.2d at 1326.

■ The lack of any actual damage requirement renders irrelevant Rhodes's argument that Star-Kist can, at most, suffer only nominal damages because it placed such a small value on the ROSE BOWL mark in its purchasing transaction with Sun Harbor. Even if true, that claim ignores the fact that a party can still have a reasonable belief that he will be legally damaged. Rhodes also incorrectly argues that Star-Kist must show that it owned superior common-law rights in the trademark at the threshold standing stage.

■ Our inquiry into whether Star-Kist has "established facts which showed that it had a legitimate personal interest," *Lipton,* 670 F.2d at 1029, focuses on the total effect of the grounds it proffered, and whether a genuine issue of material fact exists under the law as applied here. In doing so, both parties request us to consider circumstances not before the district judge when the partial summary judgment was entered. Star-Kist requested us to consider that the United States Patent and Trademark office rejected its application for the ROSE BOWL trademark. Rhodes asserts facts later developed at trial. We decline to do so. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 493 (1983).

A. *Star-Kist applied to register ROSE BOWL in the United States.*

Star-Kist persuasively argues that continued registration of Rhodes's trademark impeded its own application because of a potential likelihood of confusion. Undisputed facts show that Star-Kist did apply for registration. In addition, the similarity of the marks emphasizes the reasonableness of the likelihood of confusion claim. "We regard the desire for a registration with its attendant statutory advantages as a legitimate commercial interest." *Lipton,* 670 F.2d at 1029. Because Star-Kist dem-

onstrated a real commercial interest, we find its belief of damage from the continued registration of Rhodes's mark justifiable. Rhodes's attempted rebuttal that Star-Kist did not establish ultimate entitlement to the registration again begs the question whether Star-Kist asserted a real interest. Entitlement to registration is established on the merits. Here, we consider the preliminary issue of standing. Even if Star-Kist's predecessors had abandoned their mark, as Rhodes argues, its own revival of substantial sales in 1981–83 reestablished at least enough of a real interest to make Star-Kist more than a mere intermeddler.

### B. *Rhodes Contacted Star-Kist's Philippines Customers.*

Rhodes's attorneys warned Star-Kist's customers in the Philippines by letter that Rhodes is the true owner of the ROSE BOWL trademark by virtue of Registration No. 546,592. This is unrebutted in the record, and it is certainly reasonable to believe such a letter created a real interest for standing, given Star-Kist's business in the Philippines.

### C. *Star-Kist's Sales and Promotion Efforts.*

Nothing in the record disputes Star-Kist's sales and promotion efforts under the mark. Those sales and efforts represent a pecuniary interest in the mark.

### III

■ Star-Kist briefed its request for double costs and attorney's fees on this appeal. 28 U.S.C. § 1912; Fed.R.App.P. 38. We do not find Rhodes's appeal so frivolous as to warrant the imposition of that penalty. *Cf. NLRB v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982).

AFFIRMED.