**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HALICKI FILMS, LLC; ORIGINAL
GONE IN 60 SECONDS, LLC,
        *Plaintiffs-Appellants,*

DENICE SHAKARIAN HALICKI,
      *Plaintiff-counter-defendant-*
                *Appellant,*

           v.

SANDERSON SALES AND MARKETING,
               *Defendant,*

CARROLL SHELBY INTERNATIONAL,
INC.; CARROLL SHELBY; CARROLL
SHELBY LICENSING, INC.; CARROLL
SHELBY ENGINEERING, INC.;
CARROLL SHELBY MOTORS, INC.;
CARROLL SHELBY DISTRIBUTION
INTERNATIONAL, INC.; CARROLL
HALL SHELBY TRUST,
      *Defendants-counter-claimants,*

Nos. 06-55806
     06-55807

D.C. No.
CV-04-08813-SJO

OPINION

15303

and

UNIQUE MOTORCARS, INC.,
                *Defendant-Appellee,*

UNIQUE PERFORMANCE, INC.,
                *Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
August 4, 2008—Pasadena, California

Filed November 12, 2008

Before: Stephen Reinhardt, Roger J. Miner,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Miner

*The Honorable Roger J. Miner, Senior United States Circuit Judge for
the Second Circuit, sitting by designation.

---

**COUNSEL**

Jens B. Koepke and Timothy T. Coates, Greines, Martin, Stein & Richland LLP, Los Angeles, California, for the appellants.

Robert F. Helfing, Sedgwick, Detert, Moran, & Arnold LLP, Los Angeles, California, for the appellees and the appellees/counter-claimants.

---

**OPINION**

MINER, Circuit Judge:

   Plaintiffs, Denice Shakarian Halicki, Original Gone in 60 Seconds, LLC, and Halicki Films, LLC (collectively, the "Plaintiffs" or "Halicki"), appeal from so much of a November 14, 2005 summary judgment of the United States District Court for the Central District of California as granted defendants' — Unique Motorcars, Inc. and Unique Performance, Inc. (collectively, the "Unique Defendants"); and Carroll Shelby International, Inc., Carroll Shelby Licensing, Inc., Carroll Shelby Motors, Inc., Carroll Shelby Distribution, International, Inc., and Carroll Shelby Hall Trust (collec-

tively, the "Shelby Defendants" and collectively with the Unique Defendants, the "Defendants") — motion for summary judgment dismissing Plaintiffs' claims for: (1) copyright infringement; (2) common law trademark infringement; (3) federal unfair competition; and (4) declaratory relief. The District Court found that Plaintiffs lacked standing to assert the foregoing claims. For the reasons that follow, we hold that the District Court erred in (1) its refusal to use extrinsic evidence submitted by Plaintiffs to aid in its interpretation of an agreement between the parties, finding that the extrinsic evidence did not show that the agreement was reasonably susceptible to Plaintiffs' interpretation; (2) its interpretation of disputed language in an agreement between Halicki and a corporation, not a party to this action; (3) its application of the wrong legal standard in concluding that Plaintiffs did not have statutory standing to assert their claims for trademark infringement and unfair competition; and (4) its conclusion that Plaintiffs did not have statutory or Article III standing to assert their claims for declaratory relief. We therefore vacate the District Court's grant of summary judgment dismissing Plaintiffs' copyright, common law trademark infringement, unfair competition, and declaratory relief claims and remand the case for further proceedings.

The Shelby Defendants appeal from the District Court's denial of their motion for attorneys' fees under both the Copyright Act, 17 U.S.C. § 505, and the Lanham Act, 15 U.S.C. § 1117(a). Because none of Halicki's claims are frivolous or unreasonable, we affirm the District Court's conclusion that the Shelby Defendants are not entitled to attorneys' fees.

I. *Background*

In 1974, H.B. "Toby" Halicki directed, produced, acted in, and marketed the original motion picture *Gone in 60 Seconds* (the "Original GSS"). Toby Halicki registered a copyright for the Original GSS. The Original GSS featured "Eleanor," a yellow 1971 Fastback Ford Mustang, customized to appear as

a Mach 1 Fastback Mustang. Several years after Toby Hal-
icki's death, plaintiff Denice Halicki, Toby Halicki's widow,
obtained ownership of the 1971 Ford Fastback Mustang used
to portray Eleanor and "all right, title and interest, including
copyrights, of the film 'Gone in 60 Seconds' which were
owned by [Toby Halicki] . . . ." *See Halicki v. Carroll Shelby
Int'l, Inc.*, No. CV-04-8813, 2005 WL 5253338, at *1 (C.D.
Cal. Nov. 14, 2005). Halicki then began marketing the Origi-
nal GSS on DVD and VHS. She set up a "Gone in 60 Sec-
onds" website; sold "Gone in 60 Seconds" branded baseball
caps; licensed the "Eleanor" name and likeness for a line of
toy cars; and exhibited "Eleanor" from the Original GSS (the
"Original Eleanor") at car shows. *Id.*

On May 17, 1995, Halicki entered into an agreement (the
"Agreement") with Hollywood Pictures ("HPC" or "HPC/
Disney"), a division of the Walt Disney Company ("Disney").
Under the terms of the Agreement, HPC acquired an option
to purchase the rights to produce a remake of the Original GSS.[1]
Pursuant to the introductory paragraph of the Agreement,
HPC

> acquire[d] all sequel, remake and allied, ancillary
> and subsidiary rights therein of every nature and
> description in and to the [Original GSS] and any and
> all underlying rights thereto (collectively, the "Prop-
> erty," provided that "Property" shall not include the
> rights reserved to [Halicki] pursuant to Paragraph
> 5[ ], below) in connection with possible motion pic-
> tures . . . to be based in whole or in part upon the
> property.

Thus, "Property" was defined as the Original GSS along with
the underlying rights to the Original GSS. The Agreement
assigned to HPC "all right, title and interest in the sequel and

[1]HPC exercised its option on October 12, 1995, thereby acquiring the
rights set forth in the Agreement.

remake rights in the Property." Paragraph 4 of the Agreement set forth the "rights granted" to HPC. Paragraph 5 of the Agreement set forth the rights reserved to Halicki. Under Paragraph 5(a), Halicki reserved the right to continue to distribute and exhibit the Original GSS, and under Paragraph 5(b), Halicki reserved the "right to manufacture, sell and distribute merchandise utilizing the car known as 'Eleanor' from the Original [GSS]."

On September 19, 2000, Halicki assigned to Original Gone in 60 Seconds, LLC the exclusive right to copy, distribute, exhibit, market, advertise, derive revenues from, turn to account, perform, and otherwise exploit all distribution rights of Halicki to the Original GSS. *See Halicki*, 2005 WL 5253338, at *2. On May 11, 2001, Halicki formed the Denice Shakarian Halicki Trust and assigned to it all of her right, title, and interest in all of her property. *Id.*

In 2000, Disney released the remake of *Gone in 60 Seconds* (the "Remake GSS"). The Remake GSS also featured a car named Eleanor (the "Remake Eleanor"), but the Remake Eleanor was referred to in the film as (and was customized to appear as) a 1967 Shelby GT-500, a variant of the Ford Mustang developed by defendant Carroll Shelby with the Ford Motor Company. Shelby had secured a United States registration for "GT-500" in 1988. Soon after the release of the Remake GSS, Halicki exhibited Original Eleanor at car shows. Halicki met Carroll Shelby at one of these shows. On September 28, 2001, defendant Carroll Hall Shelby Trust applied for registration of the trademark "Eleanor" for model cars, *Halicki*, 2005 WL 5253338, at *2, but the registration has not yet issued. Then on August 30, 2002, the Carroll Hall Shelby Trust applied for registration of the trademark "Eleanor" for automobiles and structural parts of automobiles. The Carroll Hall Shelby Trust is the registered owner of the "Eleanor" trademark for automobiles and structural parts of automobiles. On September 10, 2002, Carroll Shelby and defendant Unique Motorcars, Inc. entered into a License

Agreement whereby Shelby authorized Unique Motorcars, Inc. to use the trademarks "Shelby GT-500" and "Eleanor" in connection with the manufacture and sale of vehicles and merchandise relating to any 1960s Shelby automobiles or variants thereof. Unique Motorcars, Inc. then began to manufacture, produce, and sell vehicles resembling the 1967 Shelby GT-500 "Eleanor" character that appeared in the Remake GSS. *Halicki*, 2005 WL 5253338, at *2.

On May 11, 2004, Halicki received a registration for the mark "Gone in 60 Seconds" for baseball caps. On October 25, 2004, Halicki filed a complaint against the Defendants based on alleged unauthorized creation of "replicas of Eleanor from 'Gone in 60 Seconds,' " and improper reference to, and/or use of the terms "Eleanor" and "Gone in 60 Seconds" in the marketing of the automobiles manufactured and sold by Unique Motorcars, Inc. *Halicki*, 2005 WL 5253338, at *2. On May 20, 2005, Halicki filed a Second Amended Complaint against the Unique Defendants, the Shelby Defendants, and various other defendants stating claims for: (1) copyright infringement; (2) common law trademark infringement; (3) federal unfair competition/false advertising, in violation of 15 U.S.C. § 1125 et seq.; (4) statutory unfair competition, in violation of CAL. BUS. & PROF. CODE § 17200 et seq.; (5) intentional interference with prospective economic advantage; (6) negligent interference with prospective economic advantage; (7) constructive trust/accounting; (8) declaratory relief pursuant to 15 U.S.C. § 1119, in the form of an order from the District Court instructing the United States Patent and Trademark Office to cancel the Carroll Hall Shelby Trust's registration of the "Eleanor" mark; and (9) declaratory relief in the form of a judgment declaring that Defendants do not have a right in the "Eleanor" or "Gone in 60 Seconds" marks by virtue of the registration of the "GT-500" mark. On March 22, 2005, Plaintiffs received registrations for the mark "Gone in 60 Seconds" for toy model cars and toy model kits. Then, on May 27, 2005, Plaintiffs applied to register the "Eleanor" mark for var-

ious purposes, including cars and car parts. *Halicki*, 2005 WL 5253338, at *3.

The District Court granted the Defendants' motion for summary judgment, finding, *inter alia*, that Halicki lacked standing to bring her claims for copyright infringement, trademark infringement, unfair competition, and declaratory relief because she had no rights in Remake Eleanor, having transferred those rights pursuant to the Agreement.

On November 28, 2005, Halicki filed a motion seeking reconsideration of the District Court's summary judgment, arguing that the District Court committed reversible error by failing to consider extrinsic evidence — declarations of Halicki and of two of her attorneys, Eric Weissmann and Kirk M. Hallam — supporting her interpretation of the Agreement. On January 5, 2006, Halicki submitted, in further support of her motion for reconsideration, an "Acknowledgment and Agreement" executed by her and by HPC in which HPC stated that it was its intent to reserve to Halicki the rights to Remake Eleanor. The Acknowledgment and Agreement accompanied a declaration of attorney Jeffrey S. Kravitz stating that Halicki's attorneys had been seeking for nine months to memorialize the intent of the parties at the time of the 1995 Agreement, but that HPC/Disney only agreed to enter into the Acknowledgment and Agreement in light of the November 14, 2005 summary judgment. The District Court denied Halicki's motion to reconsider, stating that it had considered the Hallam and Weissmann declarations that Halicki claimed the court had ignored. The court made no mention of the Halicki declaration, the Kravitz declaration, or the Acknowledgment and Agreement.

On November 29, 2005, the Shelby Defendants filed a motion seeking attorneys' fees, arguing that they were entitled to such fees under 17 U.S.C. § 505 (allowing the prevailing party on a copyright infringement claim to receive attorneys fees as part of costs), and 15 U.S.C. § 1117(a) (providing that

"[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" on a trademark infringement claim). On April 27, 2006, the District Court denied the Shelby Defendants' claim for attorneys' fees under §§ 505 and 1117, finding that Halicki's claims were not frivolous or unreasonable.

The timely appeal of Halicki's claims and the Shelby Defendants' subsequent claims for attorneys' fees followed.

## II.   *Standard of Review*

This Court reviews *de novo* a district court's grant of summary judgment. *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008). "We view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Id.* (citing *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 (9th Cir. 2000)).

Decisions by a district court awarding or denying attorneys' fees under the Copyright Act and under the Lanham Act are reviewed for abuse of discretion. *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 825 (9th Cir. 1997).

## III.   *Discussion*

### A.   Halicki Reserved the Merchandising Rights to Remake Eleanor

"Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a license." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (citing 17 U.S.C. § 501(b)) (conferring standing only to the "legal or beneficial owner of an exclusive right who is entitled . . . to institute an action for any infringement

. . . while he or she is the owner of it" (internal quotation marks omitted)).

Halicki's primary argument is that Paragraph 5(b) of the Agreement, which grants her the "right to manufacture, sell and distribute merchandise utilizing the car known as 'Eleanor' from the Original [GSS]," should be read to grant her rights to manufacture, sell, and distribute merchandise utilizing the Remake Eleanor as well as the Original Eleanor. Halicki claims that reading Paragraph 5(b) as reserving her rights related to the Remake Eleanor is supported by: (1) the language in the Agreement itself; (2) extrinsic evidence that the District Court was required to consider by California law; and (3) the parties' conduct subsequent to the release of the Remake GSS. Because the District Court's rulings were based in large part on a contrary interpretation of the Agreement — that, pursuant to the Agreement, Halicki transferred her rights to Remake Eleanor and therefore lacks standing to assert her claims — the interpretation of Paragraph 5(b) of the Agreement is the core issue in this case.

The meaning of Paragraph 5(b) must be determined by reading it in the context of the entire Agreement. Moreover, the extrinsic evidence presented by Halicki must be considered in aid of the interpretation of the contract. Reading Paragraph 5(b) in its context, and examining the extrinsic evidence, we conclude that the District Court erred in its interpretation of Paragraph 5(b) of the Agreement. We agree with Halicki that Paragraph 5(b) reserves to her the merchandising rights to Remake Eleanor.

### 1. The Agreement

Halicki claims that the plain language of the Agreement supports reservation of her rights to the Remake Eleanor. After examining Halicki's arguments with respect to the language in the Agreement itself, we conclude that the Agreement is "reasonably susceptible to the interpretation" she

urges. *ASP Properties Group v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 350 (Cal. Ct. App. 2005). At the same time, the Agreement's language does not command Halicki's interpretation. As a result of this ambiguity, we may properly examine extrinsic evidence to determine a definitive interpretation. *See id.* We consider the Agreement's language in this section, and the extrinsic evidence in the ensuing section. *See* Part III.A.2, *infra*.

First, Halicki argues that Paragraph 5(b) speaks of "the car known as 'Eleanor' *from* the Original [GSS]" (emphasis supplied by Halicki). We agree that the use of the word "from" lends weight to Halicki's proposed interpretation of Paragraph 5(b). Indeed "from" can be defined as "a function word to indicate the source or original or moving force of something: as . . . the source, cause, means, or ultimate agent of an action or condition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 913 (1981). This implies that "Eleanor" in another setting — such as a sequel or a remake of GSS — is still "Eleanor from the Original" GSS and is therefore encompassed by Paragraph 5(b).

Halicki next asserts that while Paragraph 5(a) speaks of rights to *continue to* distribute and exhibit the Original GSS, Paragraph 5(b) speaks of the right to "manufacture, sell and distribute," not to continue to do so; if Paragraph 5(b) was meant to refer only to the Original Eleanor, Halicki contends, it would have granted a right to "*continue to* manufacture, sell and distribute" merchandise depicting the character Eleanor. We agree that the description of the reserved rights in Paragraph 5(a) as the "right to continue" to distribute and exhibit Original GSS — as opposed to the right in Paragraph 5(b) to "manufacture, sell, and distribute" merchandise related to Original Eleanor — lends support to Halicki's proposed interpretation of Paragraph 5(b).

Halicki next urges us to examine the interaction between Paragraphs 4 and 5(b). Under Paragraph 4, Halicki granted to HPC

> all right, title, and interest of every kind and nature
> . . . to sequels to and/or remakes of the Property,
> including without limitation the following:
>
> . . . .
>
> j. The right to manufacture, sell, furnish, supply
> and distribute products, by-products, services, facili-
> ties, merchandise and commodities of every nature
> and description . . . which make reference to or are
> based upon or adopted from the Property . . ., includ-
> ing, . . . the characters, subject to Paragraph 5.b.

Paragraph 5(b) reserves to Halicki "[t]he right to manufacture, sell and distribute merchandise utilizing the car known as 'Eleanor' from the Original [GSS]." We agree with Halicki that these two provisions, when read together, are at least capable of supporting her proposed interpretation of the Agreement, even if they do not command it. According to Halicki, Paragraph 4(j) provided HPC with merchandising rights only for products related to a remake of or sequel to the original film. This reading is consistent with the language from Paragraph 4's introductory paragraph which grants HPC the rights only to "sequels to and/or remakes of the Property."[2] If we accept Halicki's view that Paragraph 4 granted HPC merchandising rights only to Remake GSS, then Paragraph 5(b) would be completely superfluous *unless*, as Halicki suggests, it was intended to reserve her rights to produce mer- chandise related to Remake Eleanor. After all, if Halicki retained all of the merchandising rights to the Original GSS,

---

[2]On the other hand, Paragraph 4(j)'s grant to HPC of the merchandising rights to any products "which make reference to or are based upon or adopted from the Property" could be read, as the Defendants suggest, to grant HPC the merchandising rights even to products related to the Origi- nal GSS. The central issue at this point, however, is whether the contract is at least "reasonably susceptible to the interpretation urged by" Halicki. *See ASP Properties Group*, 35 Cal. Rptr. 3d at 350. We conclude that it is.

there would be no reason for her to protect specifically her right to "manufacture, sell and distribute merchandise utilizing" the Original Eleanor in Paragraph 5(b). Because we conclude that the introductory portion of Paragraph 4 renders Halicki's interpretation of the rights granted in Paragraph 4(j) reasonable, the inclusion of Paragraph 5(b) in the contract supports Halicki's argument that she and HPC intended that she retain the rights to Remake Eleanor.

In a related argument, Halicki contends that Paragraph 7, which grants her merchandising royalties in all products sold by HPC "in connection with Picture or Property, other than the car from the Original Picture known as 'Eleanor,' " likewise supports her interpretation of the Agreement. Again, if Halicki's view that the parties intended Paragraph 4 to grant HPC only the rights to Remake GSS merchandise (and not to Original GSS or Original Eleanor merchandise) is reasonable — and we hold that it is — there would be no need to reference "the car from the Original Picture known as 'Eleanor' " in Paragraph 7 unless that language referred to Remake Eleanor. Thus, Paragraph 7, read in light of Halicki's reasonable interpretation of Paragraph 4, also supports the interpretation of the contract which would reserve to Halicki the rights to Remake Eleanor.

**[1]** Accordingly, the plain language of the Agreement permits an interpretation of Paragraph 5(b) as reserving Halicki's merchandising rights in Remake Eleanor as well as Original Eleanor.

### 2.    The Extrinsic Evidence

In her opposition to the Defendants' motion for summary judgment, Halicki submitted declarations of two of her attorneys, Kirk M. Hallam and Eric Weissmann, each of whom had participated in the negotiations leading up to the Agreement. Each declarant stated that (1) Halicki and her attorneys made it clear to HPC/Disney that she was to retain all rights

to Eleanor in the Remake as well as the Original GSS; and (2) HPC/Disney accepted that term and intended the Agreement to reflect the reservation of Halicki's rights in the character Eleanor. Moreover, Hallam declared that the drafts of the Agreement and related notes reflected this understanding. In her opposition to Defendants' motion for summary judgment, Halicki also submitted a declaration stating that she had made it clear to HPC that her retention of the merchandising rights to "Eleanor" was a "non-negotiable deal point."

In her motion to reconsider the District Court's decision, Halicki claimed that the District Court did not consider the Hallam, Weissmann, and Halicki declarations in its summary judgment. After filing the motion for reconsideration, Halicki submitted an "Acknowledgment and Agreement" between HPC and Halicki in further support of her motion, which stated that "HPC hereby acknowledges that as between it and Halicki, Halicki retained the merchandising rights to that certain car called 'Eleanor' as such car appears in the Remake [GSS] . . . ." The Acknowledgment and Agreement accompanied the declaration of attorney Jeffrey S. Kravitz, which stated that Halicki's attorneys had been trying for nine months to secure such an agreement in writing from HPC and had only been successful once HPC learned of the District Court's summary judgment.

On April 12, 2006, the District Court denied Halicki's motion to reconsider its summary judgment. The District Court stated (as memorialized in the civil minutes) that it had considered the Weissmann and Hallam declarations in deciding the summary judgment motion but that it had determined that the evidence presented therein did not "yield to a contractual interpretation to which the [Agreement] is reasonably susceptible." The District Court did not mention the Halicki declaration either in its summary judgment or in its decision on the motion for reconsideration. The District Court also did not mention the Acknowledgment and Agreement, which had been submitted on January 5, 2006.

**[2]** Where parties dispute the meaning of contractual language, "the first question to be decided is whether the disputed language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 132 Cal. Rptr. 2d 151, 157 (Cal. Ct. App. 2003). When deciding this question,

> the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning . . . . [I]t is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face.

*Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Cal. Ct. App. 1998) (citations omitted). Although extrinsic evidence is generally prohibited "to vary, alter or add to" terms of a contract, *id.* at 578 n.4, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible," *Pacific Gas & Elec. Co.*, 442 P.2d at 644. "If in light of the extrinsic evidence the court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in . . . interpreting the contract." *ASP Properties Group*, 35 Cal. Rptr. 3d at 350 (internal quotation marks omitted).

**[3]** In its decision denying Halicki's motion to reconsider, the District Court addressed the Hallam and Weissmann declarations, but it did not even mention the Halicki declaration or the Acknowledgment and Agreement. Lacking any indication that the court considered these documents although specifically asked to do so and although mentioning others, we

assume it did not consider the documents not mentioned. The court erred in failing to consider this evidence. These items supported Halicki's claim of a non-negotiable demand of all rights to Eleanor and of HPC's intended acquiescence in that demand. The court further erred in concluding that the language in the Agreement was not reasonably susceptible to the interpretation advanced by Halicki in light of the declarations and the Acknowledgment and Agreement. The court was required to use the extrinsic evidence to aid in its interpretation of the contract. *See ASP Properties Group*, 35 Cal. Rptr. 3d at 350.

**[4]** Reading the Agreement as a whole along with the extrinsic evidence, Paragraph 5(b) is reasonably susceptible to Halicki's interpretation. Halicki submitted three declarations — one of her own and two from her attorneys — stating that the reservation of rights in Eleanor was a non-negotiable term and that HPC/Disney understood and agreed to this. Moreover, HPC/Disney — which had nothing to gain by doing so — executed the Acknowledgment and Agreement, making clear that it was its intention that the rights to Remake Eleanor be reserved to Halicki. This is not the more usual situation where parties to an agreement disagree as to the meaning of its terms. Here, statements by both parties to the Agreement — the declarations of Halicki and her attorneys and the Acknowledgment and Agreement executed by HPC/Disney — demonstrate that each party had the same intention as to the meaning of Paragraph 5(b).[3] Having concluded that the contract, when read in light of the extrinsic evidence, is susceptible to Halicki's interpretation, we must now consider

---

[3]Halicki also argues that the fact that HPC/Disney has not made any efforts to market Remake Eleanor is further evidence that the merchandising rights to Remake Eleanor belong to her. Although HPC's failure to engage in merchandising Remake Eleanor is consistent with Halicki's contention that it intended to reserve to her the merchandising rights for Remake Eleanor, it is equally consistent with other inferences, such as that HPC had no interest in selling cars. We therefore do not rely on this consideration.

whether that interpretation is in fact the correct one. Here, the extrinsic evidence unequivocally supports Halicki's interpretation. Accordingly, we can only conclude that Paragraph 5(b) reserves to Halicki the rights to Remake Eleanor as well as Original Eleanor.[4]

B.  Whether the Eleanor Character Is Entitled To Copyright Protection

The Defendants assert on appeal that the Eleanor character does not qualify for copyright protection.

[5] This Court has stated that where a character "is only the chessman in the game of telling the story he is not within the area of the protection afforded by the copyright." *Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., Inc.*, 216 F.2d 945, 950 (9th Cir. 1954). *Warner Bros.* held that a character could only be granted copyright protection if it "constituted the story being told." *Id.* The Defendants rely on this strict standard, arguing that Eleanor is not "the story being told" but is "simply a car." In deciding that Dashiel Hammet's "Sam Spade" character did not qualify for copyright protection, *Warner Bros.* reasoned that literary characters are difficult to delineate and may be based on nothing more than an unprotected idea. *Id.*; *see Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978). *Air Pirates*, however, distinguished cartoon characters from literary characters, reasoning that comic book characters have "physical as well as conceptual qualities, [and are] more likely to contain some unique elements of expression." 581 F.2d at 755.

---

[4]Halicki contends that even if she were not a legal owner of the merchandising rights to Remake Eleanor, she could still pursue the copyright claims either because (1) she is a beneficial owner of the copyright due to her royalty interest in the Remake GSS or (2) she is the owner of the Original Eleanor copyright and Remake Eleanor is a derivative work. We need not reach either question, as we have concluded that Halicki can assert her claims as legal owner of the rights to Remake Eleanor and so need not rely on other bases for doing so.

**[6]** This Court has also recognized copyright protection for characters that are especially distinctive, *see Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988), and has noted, consistent with *Air Pirates*, that copyright protection "may be afforded to characters visually depicted in a television series or a movie," *Olson*, 855 F.2d at 1452 (citing *Silverman v. CBS, Inc.*, 632 F. Supp. 1344, 1355 (S.D.N.Y. 1986)). "Characters that have received copyright protection have displayed consistent, widely identifiable traits." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003) (citing *Toho Co., Ltd. v. William Morrow & Co., Inc.*, 33 F. Supp. 2d 1206, 1215-16 (C.D. Cal. 1998) (recognizing copyright protection for Godzilla)); *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Corp.*, 900 F. Supp. 1287, 1296-97 (C.D. Cal. 1995) (recognizing copyright protection for James Bond); *Anderson v. Stallone*, No. 87-0592, 1989 WL 206431, *7 (C.D. Cal. Apr. 25, 1989) (recognizing copyright protection for Rocky Balboa). The Defendants argue that, to the extent Eleanor can be regarded as a character, it is not sufficiently distinctive and therefore not deserving of copyright protection.

The District Court did not directly examine the question of whether Eleanor is a character deserving of copyright protection. The court therefore never addressed the question of what the appropriate standard is for making such a determination. In examining the question whether Remake Eleanor was a derivative of Original Eleanor, however, the District Court implied that Eleanor is deserving of copyright protection — the court stated that, "[i]f the Remake Eleanor is deemed a derivative work of the Original Eleanor, Plaintiffs, as the author of the Original Eleanor, would also have the exclusive right to the Remake Eleanor." *Halicki*, 2005 WL 5253338, at *4 (citing 17 U.S.C. § 103(a)).

**[7]** The Eleanor character can be seen as more akin to a comic book character than a literary character. Moreover, Eleanor "display[s] consistent, widely identifiable traits," *see*

*Rice*, 330 F.3d at 1175, and is "especially distinctive," *see Olson*, 855 F.2d at 1452. In both films, the thefts of the other cars go largely as planned, but whenever the main human character tries to steal Eleanor, circumstances invariably become complicated. In the Original GSS, the main character says "I'm getting tired of stealing this Eleanor car." And in the Remake GSS, the main character refers to his history with Eleanor. Nevertheless, this fact-intensive issue must be remanded to the District Court for a finding in the first instance as to whether Eleanor is entitled to copyright protection. On remand the court should examine whether Eleanor's "physical as well as conceptual qualities [and] . . . unique elements of expression" qualify Eleanor for copyright protection. *See Air Pirates*, 581 F.2d at 755.

## C.   Halicki's Trademark Claims

The District Court held that Halicki lacked standing to sue for common law infringement of either the "Eleanor" or "Gone in 60 Seconds" trademarks. We cannot agree. With respect to the "Eleanor" mark, the District Court's failure to evaluate Halicki's contentions that she acquired an ownership interest in the mark through prior use and that she had a cognizable commercial interest in the mark renders the court's standing analysis fatally incomplete. We therefore reverse the District Court's decision and remand for further consideration. We likewise reverse the District Court's ruling that Halicki lacked standing to sue for infringement of the "Gone in 60 Seconds" mark. As the court acknowledged, Halicki is the registered owner of the "Gone in 60 Seconds" mark for two product classes, "toy model cars and toy model car kits" and "baseball caps." A valid ownership interest in a mark (for any product class) is sufficient, although not necessary, to provide standing to sue for infringement of that mark. *See* 15 U.S.C. §§ 1114(1), 1125(a). We therefore hold that Halicki has standing to sue for infringement of the "Gone in 60 Seconds" mark.

### 1.  Standing Requirements For a Trademark Infringement Claim

To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark.[5] *See* 15 U.S.C. §§ 1114(1), 1125(a); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:20-21, 32:3, 32:12 (4th ed. 2008) (noting that standing to sue for trademark infringement under the Lanham Act extends to owners of registered and unregistered marks, and nonowners with a protectable interest in the mark); *see also Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1256 (E.D. Wash. 2004) ("[T]o maintain a [claim under § 1125(a)], the plaintiff must show that it has a commercial interest in the allegedly misused mark that is 'likely to be damaged.' " (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992))).

### 2.  The "Eleanor" Mark

The District Court found that Halicki lacked standing to bring her trademark claims based on the "Eleanor" mark solely because she had not proffered evidence that she was the registered owner of the mark. In addition, the court noted that

---

[5]The District Court asserted that "Plaintiffs concede that the common law [of trademark infringement] and the Lanham Act standing requirements are similar." *Halicki*, 2005 WL 5253338, at *10. Halicki does not contest the District Court's characterization of her position and, in fact, repeatedly argues that she has "standing under the Lanham Act." We therefore assume, as did the District Court, that the Lanham Act's standing requirements apply to Halicki's common law infringement claims. *Cf. Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004) (noting that "[t]he elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act").

the Defendant Carroll Hall Shelby Trust had produced evidence that it was the registered owner of the mark for "vehicles, namely, automobiles, engines for automobiles, and structural parts of automobiles." *Halicki*, 2005 WL 5253338, at *11.

The District Court's analysis suffers from a fundamental flaw. Halicki does not argue that she has standing to sue for infringement of the "Eleanor" mark as a registered owner of the mark. Rather, Halicki asserts standing on other grounds.

**[8]** First, she maintains that she has acquired ownership of the "Eleanor" trademark through prior use. In other words, Halicki is asserting her rights as the owner of an *unregistered* trademark. "It is axiomatic in trademark law that the standard test of ownership is priority of use. . . . [I]t is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Accordingly, ownership of an unregistered trademark, like ownership of a registered mark, is sufficient to establish standing under the Lanham Act. *See* McCARTHY, TRADEMARKS AND UNFAIR COMPETITION, *supra*, at § 32:3.

**[9]** Whether Halicki has acquired ownership of the "Eleanor" mark through prior use in commerce is a fact-intensive inquiry that requires the District Court to evaluate "the totality of the circumstances" of Halicki's case.[6] *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) (providing a non-exclusive list of five factors for the district court

---

[6]In support of her prior use argument, Halicki alleges that she (1) licenses the Original GSS for use on DVDs and VHS tapes with "Eleanor" on the package, (2) licensed the "Eleanor" name and likeness for a line of toy cars, and (3) exhibited the Original Eleanor at auto shows. She also asserts that Toby Halicki sold "Eleanor"-related merchandise, such as t-shirts, before his death.

to consider). In this case, the District Court failed even to acknowledge Halicki's prior use arguments, let alone evaluate whether her activities were sufficient to establish ownership of the "Eleanor" mark. We therefore reverse the District Court's finding that Halicki lacks standing to assert a trademark infringement claim based on the "Eleanor" mark and remand for a determination of whether her prior actions were sufficient to establish ownership of the mark. If so, Halicki has standing to bring an infringement claim.[7]

Halicki further asserts that, in the event the District Court concludes that she did not acquire ownership of the "Eleanor" mark through prior use, she nonetheless has standing because her royalty interest in the sale of Remake GSS products provides her with a commercial interest in the "Eleanor" mark. She makes this argument on the assumption that we have not reversed the District Court's finding that she does not own the merchandising rights to the Remake Eleanor. Because we have reversed that finding, however, Halicki's argument must now be that her ownership interest in the merchandising rights to the Remake Eleanor provides her with a cognizable commercial interest in the Eleanor mark. In other words, Halicki also believes she qualifies under the third possible basis for

---

[7]The District Court may have found it unnecessary to explore Halicki's prior-use arguments because it also concluded that Halicki had assigned to HPC any rights that she owned to Remake Eleanor and therefore lacked standing under the Lanham Act to bring a lawsuit related to the use of the "Eleanor" mark in Remake Eleanor products. *Halicki*, 2005 WL 5253338, at *12. This conclusion is incorrect for two reasons. First, as we have explained, Halicki reserved her merchandising rights to Remake Eleanor in the Agreement and did not assign them to HPC. Second, even if she had assigned her rights to the "Eleanor" mark, she might nonetheless have standing to sue for infringement of the mark. Ownership of a mark is sufficient but not required to establish standing under the Lanham Act. So long as Halicki retained a cognizable interest in the use of the "Eleanor" mark — an issue we need not decide at this time — she would have standing under the Lanham Act even as a non-owner. The District Court's failure to evaluate whether Halicki retained a cognizable interest renders its conclusion incomplete.

Lanham Act standing, as a non-owner with a cognizable commercial interest in the allegedly infringed mark.

**[10]** The District Court did not reach Halicki's non-trademark owner standing argument. If the District Court determines on remand that Halicki has not established ownership of the "Eleanor" mark through prior use — and therefore does not have standing on that basis — the court must then consider Halicki's argument that she is a non-owner with a "commercial interest in the allegedly misused mark that is likely to be damaged." *See Nat'l Licensing Ass'n, LLC*, 361 F. Supp. 2d at 1256-57; MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, *supra*, at § 32:12.

### 3. The "Gone in 60 Seconds" Mark

**[11]** With respect to the "Gone in 60 Seconds" mark, the court found that Halicki lacked standing because Halicki's registered marks for "Gone in 60 Seconds" are for toy model cars, toy model car kits, and baseball caps, whereas the Defendants only manufacture, produce, and sell restored vehicles fitted and detailed to replicate the 1960s Shelby GT-500 and GT-350 automobiles — *i.e.*, actual cars. *Halicki*, 2005 WL 5253338, at *11 ("Because Plaintiffs are not the registered owner of 'Gone in 60 Seconds' for vehicles or automobiles, Plaintiffs may not claim standing in this instance as a registrant."). This conclusion confuses an analysis of the merits of Halicki's infringement claim with an analysis of whether she has standing to bring those claims. To establish standing under the Lanham Act, a plaintiff need only demonstrate that she is the registered owner of a mark for any class of products, even one that does not compete directly with the defendant's products. *See* 15 U.S.C. § 1114. The question of whether the products on which the allegedly infringing mark appears are sufficiently related to goods sold by the plaintiff such that the defendant's actions qualify as infringement is, by contrast, a merits question. *See Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007) (noting that

the degree of "relatedness" between the defendant's and the plaintiff's products is one factor that a district court should consider when evaluating whether the defendant has infringed on plaintiff's mark). In this case, it is undisputed that Halicki is a registered owner of the "Gone in 60 Seconds" mark for "toy model cars and toy model car kits" and "baseball caps." She therefore has standing under the Lanham Act to bring an infringement claim against others allegedly using the mark in a proscribed manner.

[12] Although we do not reach the merits of Halicki's "Eleanor" or "Gone in 60 Seconds" trademark infringement claims, we note that the defendants' use of those marks on products — *i.e.*, automobiles and automobile parts — that do not directly compete with products sold with Halicki's mark — *i.e.*, toy cars, toy model car kits, baseball caps, and t-shirts — is not dispositive of the merits of Halicki's claim. *See* MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, *supra*, at § 24:2 ("Occasionally, a modern court will fall into the error of thinking that there must be competition between the parties for trademark infringement to occur."); *see, e.g.*, *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F. Supp. 990 (W.D. Mo. 1986) (automobile dealer's use of the name "Hallmark Dodge" infringed on trademark owned by greeting card company); *Triangle Publ'ns, Inc. v. Standard Plastic Products, Inc.*, 241 F. Supp. 613 (E.D. Pa. 1965) (producer of "MISS SEVENTEEN" luggage found to have infringed "SEVENTEEN" trademark registered to magazine publisher); *see also* MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION, *supra*, at § 24:61 (providing extensive list of successful infringement claims brought by registered trademark owners against producers of non-competing goods). As the Tenth Circuit recently explained,

> [The] basic premise — that a trademark provides protection only when the defendant uses the mark on directly competing goods — is no longer good law.

> Although this notion survived into the early 1900s, it has long since been superceded.

*Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833-35 (10th Cir. 2005). The core question in non-competitive goods cases, as in most trademark infringement cases, is "whether customers are likely to be confused about the source or sponsorship of the products." *Perfumebay.com Inc.*, 506 F.3d at 1173 (internal quotation marks omitted) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006)); *see also* 15 U.S.C. §§ 1114(1), 1125(a). The "proximity or relatedness of the goods" is but one of eight factors for a district court to consider in its "likelihood of confusion" analysis. *See Perfumebay.com*, 506 F.3d at 1173. Thus we caution the District Court to take a sufficiently broad approach if and when it reaches the merits of Halicki's infringement claims.

## D.    Standing to Seek Declaratory Relief

**[13]** Halicki contends that the District Court erred by finding that she did not have standing to seek a declaratory judgment cancelling the "Eleanor" trademark registration of the Defendant Carroll Hall Shelby Trust. We have explained the standing requirements for a cancellation claim brought under § 1064 of the Lanham Act:

> The Lanham Act requires only that the cancellation petitioner plead and prove facts showing a 'real interest' in the proceeding in order to establish standing. While [n]o absolute test can be laid down for what must be proved, a cancellation petitioner must show he is more than an intermeddler but rather has a personal interest, and that there is a real controversy between the parties. Thus, his allegations alone do not establish standing. The petitioner, instead, must show a real and rational basis for his belief that he would be damaged by the registration sought to

be cancelled, stemming from an actual commercial or pecuniary interest in his own mark. Interest assertions will vary with the facts surrounding each cancellation dispute and therefore, a petitioner's standing must be scrutinized case-by-case. Examples of what courts have countenanced as reasonable bases are: an assertion of a likelihood of confusion [between the petitioner's mark and the registered mark at issue] which is not wholly without merit, . . . or . . . a rejection of an application during prosecution.

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984) (internal citations and quotation marks omitted). The District Court found that Halicki did not show a "real and rational basis for [her] belief that [s]he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in [her] own mark," *id.*, because her "exclusive rights lie only with the Original Eleanor and the exploitation of that property," *Halicki*, 2005 WL 5253338, at *19. For the reasons stated above, Halicki has made the showing required by *Star-Kist*. First, Halicki reserved the rights to Remake Eleanor. Moreover, an issue exists as to whether there is a real likelihood of confusion between the mark as used by the Defendants and the mark as used by Halicki. If Halicki were to sell a car based on the Original Eleanor, she may be able to show that a likelihood exists that there would be confusion in the marketplace.

**[14]** The District Court also found that Halicki did not have Article III standing — specifically, the court found that Halicki had not shown an injury-in-fact because she provided no evidence such as lost profits from the Defendants' merchandising of Eleanor. The District Court has conflated the Article III requirement of alleging an injury-in-fact with the burden of production required to defeat summary judgment. Halicki submitted two expert reports estimating damages in excess of $7 million. It is not clear from the District Court's opinion if

it considered this evidence and rejected it or if it did not consider it at all. In any event, the District Court erred by concluding that a lack of evidence supporting an alleged injury-in-fact deprived Halicki of Article III standing. Halicki has alleged an injury-in-fact and submitted evidence on it sufficient to preclude summary judgment for lack of standing. Moreover, Halicki has statutory standing under the Lanham Act because she retains the merchandising rights to Remake Eleanor and, as stated above, an issue exists as to whether the Defendants' use of the mark "Eleanor" has created a likelihood of confusion in the marketplace.

### E.    Halicki's Other Claims

**[15]** The District Court rejected Halicki's claim for constructive trust based on its understanding that she did not have standing to bring suit for trademark infringement. In view of the foregoing, the District Court should revisit her constructive trust claim in the event that she establishes trademark standing and infringement.

**[16]** To the extent the District Court granted the Defendants' summary judgment motion as to Halicki's remaining federal law claim for false advertising and unfair business competition and state law claims for intentional or negligent interference with prospective economic advantage, Halicki has waived any challenges to the dismissal of these claims. Halicki's two passing references to "related state claims" in the argument section of her opening brief are insufficient to preserve those remaining state and federal claims for appellate review. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858 n.4 (9th Cir. 2008) (stating that arguments not raised in the opening brief are waived); *Aramark Facility Servs. v. Serv. Employees Intern. Union, Local 1877*, 530 F.3d 817, 824 n.2 (9th Cir. 2008) (stating that arguments made in passing and inadequately briefed are waived).

**[17]** Halicki also challenges the District Court's dismissal for lack of standing of her state claim for unfair competition

under Cal. Bus. & Prof. Code § 17200 et seq. The District Court based its dismissal on its prior conclusion that Halicki had retained only an interest in the Original Eleanor, not Remake Eleanor. As we have now concluded otherwise, we reverse the District Court's ruling on this issue and hold that Halicki has standing to bring her state unfair competition claim.

F.   Cross-appeal: Defendants are not entitled to attorneys' fees under 17 U.S.C. § 505 of the Copyright Act or 15 U.S.C. § 1117(a) of the Lanham Act

The Shelby Defendants claim that the District Court erred in denying their request for attorneys' fees, arguing that because the District Court found that the plain language of the Agreement precluded Halicki's claims, those claims were therefore frivolous. As stated above, this Court reviews the District Court's denial of the Shelby Defendants' motion for attorneys' fees for abuse of discretion. *See Stephen W. Boney, Inc.*, 127 F.3d at 825.

The Copyright Act under 17 U.S.C. § 505 provides for recovery of reasonable attorneys' fees by the prevailing party in a civil action. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court eliminated the "dual standard" approach where attorneys' fees are awarded to defendants only where claims against it were frivolous or brought in bad faith. *Id.* at 531-32, 534 ("Prevailing plaintiffs and prevailing defendants are to be treated alike . . . ." ). *Fogerty* also rejected a rule requiring attorneys' fees in copyright infringement cases as a matter of course, instead leaving the question of attorneys fees to the discretion of district courts. *Id.* at 534 ("[A]ttorneys' fees are to be awarded to prevailing parties only as a matter of the court's discretion.").

In deciding whether to award attorneys' fees, courts in this Circuit consider certain factors, including (1) "the degree of success obtained; [(2)] frivolousness; [(3)] motivation; [(4)]

objective unreasonableness (both in the factual and legal arguments in the case); and [(5)] the need in particular circumstances to advance considerations of compensation and deterrence." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994), *overruled on other grounds by Fogerty*, 510 U.S. at 534 (internal citations omitted).

The District Court applied the factors articulated in *Jackson* and denied the Shelby Defendants' claim for attorneys' fees pursuant to § 505, concluding that (1) the claims were not "frivolous, fanciful, or clearly baseless"; (2) Plaintiffs' motivation in bringing the claims was to protect an interest that they believed was theirs; and (3) the Plaintiffs' claims were not unreasonable and were decided on the basis of standing, not on the question whether the Shelby Defendants were in fact copyright infringers. The Shelby Defendants claim that the District Court abused its discretion in applying the factors. According to the Shelby Defendants, Halicki's copyright claims were frivolous and unreasonable because: (1) "it is highly doubtful" that the Eleanor character qualifies for copyright protection; and (2) Halicki had no standing to assert any claims based on copying of Remake Eleanor. The Shelby Defendants claim that Halicki could not have thought the interests she sought to protect were hers, because she transferred those interests. As set forth above in the discussion of Halicki's claims, that is not so, and Halicki's causes of action must be heard on the merits. So, regardless which party prevails, the District Court correctly found that Halicki's claims were not in any way frivolous, unreasonable, or lacking in good faith. The District Court did not abuse its discretion by denying the Defendants' motion for attorneys' fees under § 505.

Attorneys' fees under the Lanham Act are awarded in "exceptional cases." 15 U.S.C. § 1117(a). An exceptional case is found where "a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Stephen W. Boney, Inc.*, 127 F.3d at 827. The District Court found that this case was

not exceptional under the meaning of § 1117(a), concluding that "nothing in the record demonstrates that Halicki's lawsuit 'is groundless, unreasonable, vexatious, or pursued in bad faith.' " No abuse of discretion can be found in the District Court's conclusion that this is not an exceptional case within the meaning of § 1117(a).

**[18]** The District Court's denial of attorneys' fees under 17 U.S.C. § 505 and 15 U.S.C. § 1117 is affirmed.

## IV.   *Conclusion*

The judgment of the District Court with respect to Plaintiffs' claims is VACATED. The case is REMANDED for further proceedings consistent with this opinion. The judgment is AFFIRMED with respect to the District Court's denial of the Shelby Defendants' claims for attorneys' fees.