**KYTHERA BIOPHARMACEUTICALS, INC., Plaintiff,**

v.

**LITHERA, INC., Defendant.**

**No. CV 13–6338 RSWL (SSx).**

United States District Court, C.D. California.

Feb. 20, 2014.

---

**40.** Docket No. 3 at 5.

Philip Ou, McDermott Will and Emery LLP, Menlo Park, CA, Elham Ellie Hourizadeh, McDermott Will and Emery LLP, Los Angeles, CA, John J. Dabney, Katie Bukrinsky, Mary D. Hallerman, McDer-

mott Will and Emery LLP, Washington, DC, for Plaintiff.

Benjamin A. Katzenellenbogen, Emily K. Sauter, Knobbe Martens Olson and Bear LLP, Irvine, CA, for Defendant.

### ORDER re: Defendant's Motion to Dismiss the Complaint [20]

RONALD S.W. LEW, Senior District Judge.

Currently before the Court is Defendant Lithera, Inc.'s ("Defendant") Motion to Dismiss the Complaint [20]. Plaintiff Kythera Biopharmaceuticals, Inc. ("Plaintiff") filed its Opposition on December 17, 2013 [30]. Defendant filed a Reply on December 23, 2013 [31]. This matter was taken under submission on January 2, 2014 [32]. Having reviewed all papers submitted pertaining to the Motion, and having considered all arguments presented to the Court, the Court **NOW FINDS AND RULES AS FOLLOWS:**

Defendant's Motion to Dismiss is hereby **DENIED.**

### I. Background

Plaintiff is a Delaware corporation with its principal place of business in California. Compl. ¶ 2. Defendant is also a Delaware corporation with its principal place of business in California. *Id.* at ¶ 3.

Plaintiff is a biopharmaceutical company dedicated to researching and developing pharmaceuticals used in aesthetic medicine, including pharmaceuticals to reduce human body fat. *Id.* at ¶ 6. Plaintiff was founded in 2005. *Id.* Since 2006, Plaintiff has used the mark KYTHERA for its pharmaceutical research and development, including in connection with its lead product candidate, ATX–101, which is designed to reduce human body fat. *Id.* at ¶ 7.

Plaintiff owns a federal trademark registration for KYTHERA, U.S. Reg. No. 3357920, registered December 18, 2007.[1] *Id.* at ¶ 9. Plaintiff also owns a federal trademark registration for KYTHERA, U.S. Reg. No. 4012388, registered August 16, 2011.[2] *Id.* at ¶ 11.

Plaintiff has invested considerable resources to advertise and promote its goods and services under its KYTHERA marks and trade names. *Id.* at ¶ 12.

After Plaintiff first used its KYTHERA marks and trade names, Defendant filed an intent to use application in the United States Patent and Trademark Office ("USPTO") for LITHERA for "pharmaceutical preparations for reducing the size and appearance of adipose deposits in a body." *Id.* at ¶ 14. Defendant received a federal trademark registration for LITHERA, U.S. Reg. No. 4067542, registered

---

1. Specifically, the service mark registration was granted for: "Chemical research; Chemical, biochemical, biological and bacteriological research and analysis; Conducting early evaluations in the field of new pharmaceuticals; Development and test of chemical production methods; Development of new technology for others in the field of biotechnology; Development of pharmaceutical preparations and medicines; Medical and scientific research in the field of biotechnology; medical and scientific research, namely, conducting clinical trials; Pharmaceutical drug development services; Pharmaceutical product evaluation; Pharmaceutical research and development; Pharmaceutical research services; Research on the subject of pharmaceuticals; Testing, inspection or research of pharmaceuticals, cosmetics or foodstuff." Compl. Ex. A.

2. Specifically, a service mark was granted for: "Research and development of pharmaceutical preparations and aesthetic preparations; medical and scientific research information in the fields of pharmaceutical preparations, aesthetic preparations and clinical trials; and providing a website featuring information about investigational pharmaceutical preparations and aesthetic preparations." Compl. Ex. A.

December 6, 2011. *Id.* at ¶ 15. Defendant's trademark application alleges a date of first use of Lithera in commerce of September 2011. *Id.* Defendant advertises its goods and services at lithera.com. *Id.* at ¶ 14.

The Parties' goods and services are discussed and presented under the KYTHERA and LITHERA marks and names in the same publications, including investor publications, and at the same conferences. *Id.* at ¶ 20. Plaintiff has demanded that Defendant cease and desist all use of LITHERA and similar names and marks, but Defendant has refused to do so. *Id.* at ¶ 23.

Plaintiff filed its Complaint on August 29, 2013 [1], alleging trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. §§ 1114, and 1125, and under California law. Plaintiff also included a claim for trademark cancellation under 15 U.S.C. §§ 1052(d), and 1119 [1].

Defendant filed the instant Motion to Dismiss the Complaint on November 25, 2013 [20].

## II. Legal Standard

### A. *Motion to Dismiss Pursuant to Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. Dismissal can be based on a lack of cognizable legal theory or lack of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). However, a party is not required to state the legal basis for its claim, only the facts underlying it. *McCalden v. Cal. Library Ass'n,* 955 F.2d 1214, 1223 (9th Cir.1990). In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. *Klarfeld v. United States,* 944 F.2d 583, 585 (9th Cir.1991).

The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of its claim. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation omitted). Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

If dismissed, a court must then decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000).

## III. Discussion

### A. *Request for Judicial Notice*

Defendant requests that this Court take judicial notice of Plaintiff's federal service

mark registrations, the USPTO's records of the registrations, and Plaintiff's Securities and Exchange Commission public filings. Mot. 3:18–4:14.

 "A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a] motion to dismiss into a motion for summary judgment." *United States v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir.2003) (citing *Van Buskirk v. CNN,* 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994)). The incorporation by reference doctrine permits the Court to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir.1999)); *see also Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Id.* (citing *Parrino v. FHP, Inc.,* 146· F.3d 699, 706 (9th Cir. 1998)).

 Plaintiff's service mark registrations are attached to its Complaint (Compl. Exs. A–B), and these registrations form the basis of some of Plaintiff's claims of trademark infringement (*see e.g.,* Compl. ¶¶ 31–36). As such, the Court takes judicial notice of the trademark records for Plaintiff's trademark registrations.

 Furthermore, "[o]n a motion to dismiss, a court may take judicial notice of matters of public record outside the pleadings." *Plevy v. Haggerty,* 38 F.Supp.2d

816, 821 (C.D.Cal.1998) (citing *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991)). Such public records include Securities and Exchange Commission ("SEC") filings. *Id.* Accordingly, the Court also takes judicial notice of Plaintiff's SEC filings.

## B. *Trademark Infringement*

 In its Complaint, Plaintiff has alleged causes of action for: (1) trademark infringement, (2) unfair competition, and (3) false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 & 1125, and under California law. Compl. ¶¶ 25–36, 40–44.

 This Court analyzes these claims together for the purposes of this Motion. "[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition." *Hokto Kinoko Co. v. Concord Farms, Inc.,* 810 F.Supp.2d 1013, 1031 (C.D.Cal.2011) (citing *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir.1979)); *see also Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1173 (C.D.Cal.1986) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same"). A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1046 n. 6 (9th Cir.1999) (citing 15 U.S.C. §§ 1114(1) & 1125; *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979)). Furthermore, the Ninth Circuit "has consistently held that state common law

claims of unfair competition ... are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994) (citing *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991)).

█ To prove a claim of trademark infringement, a plaintiff must show: (1) that it has a valid, protectable trademark, and (2) that defendant's use of the mark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir.2007) (citing *Brookfield Commc'ns*, 174 F.3d at 1047, 1053); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir.2006) ("A claim of trademark infringement under § 1114(1)(a) of the Lanham Act requires a trademark holder to demonstrate: (1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers") (internal quotes omitted) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir.2005)).

### 1. *Validity of the Trademarks*

Defendant contends that Plaintiff has no protectable interest in the KYTHERA marks because Plaintiff does not use those marks in connection with performing services for the benefit of others. Mot. 8:1–13; Reply 13:19–21. Plaintiff avers that its federal trademark registrations show the incontestible status and validity of its rights in the KYTHERA marks. Opp'n 8:2–13.

█ The Lanham Act defines a trademark as:

any word, name, symbol, or device, or any combination thereof—

(1) used by a person, or

(2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127. Service marks are similarly defined; in fact "the only difference between a trademark and a service mark is that a trademark identifies goods while a service mark identifies services.... Service marks and trademarks are identified by identical standards." *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1156 (9th Cir.2001) (citing *West & Co., Inc. v. Arica Inst., Inc.*, 557 F.2d 338, 340 n. 1 (2d Cir.1977); *Caesars World, Inc. v. Caesar's Palace*, 490 F.Supp. 818, 822 (D.N.J.1980)).

█ Typically, "[r]egistration of a mark 'on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services, specified in the registration.'" *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir.2007) (quoting *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir.1999)). Accordingly, "the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration." *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219–20 (9th Cir.1996) (citing *Vuitton et Fils S.A. v. J. Young Enters.*, 644 F.2d 769, 775–76 (9th Cir.1981); *Rolley, Inc. v. Younghusband*, 204 F.2d 209 (9th Cir.1953)). The presumption can be rebutted "by showing that the registrant had not established valid ownership rights in the mark at the time of registration." *Id.* In this case, both of Plaintiff's marks are federally registered service marks; they are therefore entitled to a presumption of validity. *See* Compl.

9191 9, 11 Exs. A–B. Nevertheless, Defendant contends that Plaintiff has no valid rights in the marks.

To acquire ownership of a trademark, "[i]t is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir.2008) (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996)). Use of a mark means the bona fide use of such mark in the ordinary course of trade, and not made merely to reserve a right in a mark. 15 U.S.C. § 1127. The term "use in commerce" is congruent with this definition as well. *See Electro Source, LLC v. Brandess–Kalt–Aetna Group, Inc.*, 458 F.3d 931, 936 (9th Cir.2006). Consequently, "[f]or both goods and services, the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1204 (9th Cir.2012) (quoting *Chance*, 242 F.3d at 1159).

As a preliminary matter, Plaintiff has alleged that it has used its KYTHERA marks both in connection with goods and with services. In this respect, it is crucial to determine whether Plaintiff has plausibly alleged that it has used the KYTHERA marks in commerce in connection with both its goods and its services.

The Court first finds that Plaintiff has alleged sufficient facts to show that it has a protectable trademark interest. Shipments of drugs for clinical testing may be a sufficient use in commerce to show a protectable interest. *See G.D. Searle & Co. v. Nutrapharm, Inc.*, No. 98 Civ. 6890 TPG, 1999 WL 988533, at *3 (S.D.N.Y. Nov. 1, 1999) (citing S. REP. 100–515, 44–45 (1998), reprinted in 1988 U.S.C.C.A.N. 5577, 5607; H.R. No. 100–1028, at 15

(1998)) (noting that the legislative history for the 1989 amendment to the Lanham Act specifically cited shipments for clinical trials as a sufficient use in commerce). Here, because Plaintiff alleges that its "lead product candidate" is "currently in Phase III clinical development," such activity may be sufficient to show that Plaintiff used the KYTHERA trademark on goods in commerce. Compl. ¶ 1. Specifically, it is plausible that Plaintiff has shipped ATX–101 under its KYTHERA marks in connection with its clinical trials. As the Lanham Act protects registered and unregistered marks (*see* 15 U.S.C. § 1125), Plaintiff has properly alleged a protectable interest, even if that interest is not registered.

It is less clear whether Plaintiff has sufficiently alleged facts showing that it has a valid, protectable interest in its service marks.

Defendant cites to *In re Canadian Pacific Ltd.*, 754 F.2d 992, 994 (Fed.Cir.1985), for the proposition that a service means "the performance of labor for the benefit of another." Mot. 8:1–7. Several courts have cited to *Canadian Pacific* for the idea that services "must not be 'solely for the benefit of the performer; the services must be rendered to others.'" *See e.g., Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 137–38 (2d Cir.1999); *In re Adver. & Mktg. Dev., Inc.*, 821 F.2d 614, 619 (Fed.Cir. 1987); *see also Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F.Supp.2d 726, 739 (N.D.Tex.2011); *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F.Supp.2d 502, 513 (E.D.Va.2003).

However, the Ninth Circuit has held that "trademark rights can vest even before any goods or services are actually sold." *Brookfield Commc'ns*, 174 F.3d at 1052 (quoting *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d

1194, 1200 (9th Cir.1979)). The Ninth Circuit employs the " 'totality of the circumstances' approach" to determine "whether the two prongs of the 'use in commerce' test have been satisfied." *Id.* at 1205. Under this approach, the Court may consider certain pre-sales activities "to determine whether a service mark has been adequately used in commerce so as to gain the protection of the Lanham Act." *Chance,* 242 F.3d at 1159. Such a determination is "highly fact specific." *Rearden LLC,* 683 F.3d at 1208; *Electro Source,* 458 F.3d at 940.

█ Actually rendering a service to third parties is not necessarily required to acquire a protectable interest. *Rearden LLC,* 683 F.3d at 1204; *Brookfield Commc'ns,* 174 F.3d at 1052; *Macy's, Inc. v. Strategic Marks, LLC,* No. 11–6198 SC, 2013 WL 1149570, at *4 (N.D.Cal. Mar. 19, 2013). " 'The purpose of a trademark is to help consumers identify the source' " of a good or service, and a mark " 'is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner.' " *Id.* (quoting *Brookfield Commc'ns,* 174 F.3d at 1051). What matters is whether Plaintiff's pre-sales activities "constituted 'use in a way sufficiently public to identify or distinguish the [services] in an appropriate segment of the public mind as those of the adopter of the mark.' " *Brookfield Commc'ns,* 174 F.3d at 1052 (quoting *New West,* 595 F.2d at 1200). Of course, if a party only provides services internally and does not provide or offer services to outsiders, that party likely "would fail to show use in a way sufficiently public in nature to identify or distinguish those services in an appropriate segment of the public mind." *Rearden LLC,* 683 F.3d at 1206–07 (citing *Brookfield Commc'ns,* 174 F.3d at 1052). Nevertheless, it is at least possible that a party could use its marks in such a way as to identify its services to the public under that mark without offering commercial services to the public.

█ Here, Plaintiff has alleged that it has engaged in some activities to identify its research services. For example, Plaintiff alleges that doctors writing a letter to the editor in the Aesthetic Surgery Journal reference both Plaintiff and Defendant by their KYTHERA and LITHERA names, as well as the Parties' current research. Compl. ¶ 19 Ex. C. Moreover, a presenter at the "AAD annual conference" mixed up KYTHERA and LITHERA when referencing the Parties' goods and services. *Id.* at ¶ 20. In short, Plaintiff has alleged instances where individuals have actually identified the KYTHERA mark with certain research services Plaintiff rendered.

Moreover, the very public records Defendant presents show that Plaintiff actually offers its research services to others. For example, the excerpt from the trademark records for U.S. Trademark Registration No. 4,012,388–U.S. Application Ser. No. 85/225,218 specifically states that "[i]n August 2010, KYTHERA announced a *licensing and development agreement* worth up to $373 million granting Intendis, Bayer HealthCare's dermatology business, commercialization rights to ATX–101 outside of the U.S. and Canada." Sauter Decl. Ex. 2 p. 42 (emphasis added). The application further states that "KYTHERA and Intendis are *collaborating on the development* of ATX–101 in Europe." *Id.* (emphasis added). The excerpt from the trademark records for U.S. Trademark Registration No. 3,357,920 similarly indicates that Plaintiff and Bayer are collaborating on research for ATX–101. *Id.* Ex. 3 p. 57. Such statements indicate that Plaintiff plausibly provides research services to Intendis and Bayer in connection with ATX–101. It is plausible that Plaintiff renders its research services to such partners un-

der its KYTHERA mark. As such, the Court rejects Defendant's arguments that Plaintiff does not have a valid service mark for failure to provide services to others.

### 2. *Likelihood of Confusion*

■ Defendant also argues that the Court should dismiss the Complaint because Plaintiff has not alleged any facts that could plausibly suggest a likelihood of confusion by the relevant consuming public. Mot. 7:20–25; Reply 5:18–22. Plaintiff avers that not only has it alleged substantial facts supporting its claims of likelihood of confusion, but also that consumer confusion is not the only relevant type of confusion. Opp'n 12:1–16.

■ "The likelihood of confusion is the central element of trademark infringement." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir.2000) (quoting *Official Airline Guides v. Goss*, 6 F.3d 1385, 1391 (9th Cir.1993)). Courts in the Ninth Circuit typically apply the eight factors set out in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979) to determine whether a defendant's use of a mark or name creates a likelihood of confusion. *See Rearden LLC*, 683 F.3d at 1199; *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 507 (9th Cir.2011); *GoTo.com*, 202 F.3d at 1205. Those factors are: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets. *Id.; Sleekcraft*, 599 F.2d at 348.

Plaintiff has alleged facts supporting its allegations of a likelihood of confusion. For example, Plaintiff has alleged that the Parties' marks are similar, are used on the same types of goods and services, and that their goods will be marketed through the same channels of trade, advertised in the same mediums, target the same customers, and serve similar functions. Compl. ¶¶ 16–18. Plaintiff has also alleged instances of actual confusion. *Id.* at ¶¶ 19–20. These alleged facts tend to show a likelihood of confusion and therefore plausibly support Plaintiff's claims.

Nevertheless, Defendant avers that Plaintiff's claims fail because Plaintiff simply cannot show that consumers will be confused because there are no actual consumers at this time. Reply 2:22–3:11, 3:21–25, 4:4–5, 4:14–16.

■ Defendant is correct that the Ninth Circuit's likelihood of confusion analysis focuses on "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Rearden LLC*, 683 F.3d at 1214 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002)). In fact "the *sine qua non* of trademark infringement is consumer confusion." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir.2013).

■ However, Plaintiff is also correct that "nonconsumer confusion may also be relevant to the 'likelihood of confusion' inquiry." *Rearden LLC*, 683 F.3d at 1214; *see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 16 (1st Cir. 2004) (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir.1997); *Insty\*Bit, Inc. v. Poly–Tech Indus., Inc.*, 95 F.3d 663, 672 (8th Cir.1996); *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1119–20 (6th Cir.1996); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 128 (4th Cir. 1990); *In re Artic Elec. Co., Ltd.*, 220 U.S.P.Q. 836, 838, 1983 WL 51896 (T.T.A.B.1983); Restatement (Third) of Unfair Competition § 20 cmt. b (1995); *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 888 F.Supp. 192, 200 (D.Me.

1995)). Specifically, non-consumer confusion may be relevant "where there is confusion on the part of: (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose confusion could influence consumers." *Id.* It is clear that

> confusion on the part of at least certain non-consumers could either: (1) turn into actual consumer confusion (i.e., potential consumers); (2) serve as an adequate proxy or substitute for evidence of actual consumer confusion (i.e., non-consumers whose confusion could create an inference of consumer confusion); or (3) otherwise contribute to confusion on the part of the consumers themselves (i.e., non-consumers whose confusion could influence consumer perceptions and decision-making).

*Id.* at 1216. In other words, while the focus of the Court's inquiry is on whether actual consumers are confused, that does not necessarily mean that evidence of confusion amongst non-consumers is irrelevant.

■ In any event, as indicated, *supra*, it appears that Plaintiff has used its KYTHERA marks in commerce by engaging in clinical trials and thereby likely shipping ATX–101 under its KYTHERA mark (Compl.¶ 1), and by rendering its research and development services to its strategic partners (*see* Sauter Decl. Ex. 2 p. 42, Ex. 3 p. 57). Contrary to Defendant's assertions (*see* Mot. 9:23–27; Reply 6:3–8), Plaintiff *has* alleged commercial use of its marks. At this stage of the litigation, the Court finds that it cannot categorically conclude that there are no consumers to be confused, especially given that Plaintiff has plausibly alleged that it has used its marks in commerce. As such, the Court finds that Plaintiff has sufficiently and plausibly alleged its claims for trademark infringement.

### 3. *Whether Plaintiff's Claims are Premature*

■ Defendant contends, however, that Plaintiff's claims are premature because a likelihood of confusion analysis cannot be performed at this time. Mot. 9:18–10:28; Reply 5:23–10:7. Furthermore, Defendant contends that Plaintiff's claims are not ripe for adjudication because they rest "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Reply 5:24–6:3 (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotation marks omitted)). The crux of Defendant's argument lies in its contention that neither Plaintiff nor Defendant has commercially available products or services. Mot. 10:13–28; Reply 6:3–8. Plaintiff, on the other hand, argues that the Court may grant injunctive relief where trademark infringement is threatened or imminent. Opp'n 15:14–24.

Defendant's contentions are misplaced. Simply because some of the *Sleekcraft* factors are not ripe for disposition at this time does not mean that the Court cannot conduct a *Sleekcraft* analysis. *See Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 399 (9th Cir.1982) (affirming a district court's finding that no likelihood of confusion existed even though the fourth and eighth *Sleekcraft* factors were not ripe for disposition). In fact, although the parties in *Chesebrough–Pond's* had engaged in marketing and developing products under their respective marks, there was no discussion of whether the parties had already engaged in product sales. *Id.*

Moreover, it is clear that Plaintiff *has* alleged facts pertaining to the likelihood of confusion analysis that *are* ripe for disposition. For example, Plaintiff has alleged that the marks are similar "in sight, sound, meaning and overall visual impression."

Compl. ¶ 16. Plaintiff has also alleged two instances of actual confusion. *Id.* at ¶¶ 19–20. Plaintiff alleges that both Plaintiff and Defendant have taken pronounced steps in taking their respective products to market. *Id.* at ¶ 1.

At this point, Plaintiff has sufficiently alleged that it is currently using its marks in commerce and that Defendant's use of its mark is likely to cause confusion. Such is enough to state a claim for trademark infringement. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1144 (9th Cir.2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1124 (9th Cir. 2006)).

■ In any event, to the extent Defendant contests the justiciability of this Action, such an argument is more properly presented as a challenge to this Court's subject matter jurisdiction. *See Gemtel Corp. v. Cmty. Redevelopment Agency,* 23 F.3d 1542, 1544 n. 1 (9th Cir.1994) (finding mootness and ripeness properly challenged under Fed.R.Civ.P. 12(b)(1)); *Jackson v. City and Cnty. of San Francisco,* 829 F.Supp.2d 867, 870 (N.D.Cal.2011) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000); *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989)). This is especially true because a court is allowed to consider facts and need not assume the truthfulness of a complaint in deciding a Rule 12(b)(1) motion. *See Americopters, LLC v. FAA,* 441 F.3d 726, 732 n. 4 (9th Cir.2006).

### IV. Conclusion

For the foregoing reasons, the Court hereby **DENIES** Defendant's Motion to Dismiss the Complaint [20].

**IT IS SO ORDERED.**