**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4112-19

CAROLYN L. BABURKA,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY
(as per: Title 59 Requirements,
suing a Public Entity),

     Defendant,

and

HAZLET TOWNSHIP, HAZLET
TOWNSHIP POLICE DEPARTMENT,
POLICE CHIEF PHILIP MEEHAN,
and POLICE OFFICER CHARLEIGH
LOGOTHETIS,

     Defendants-Respondents.

_____

Submitted April 19, 2021 – Decided June 10, 2021

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1266-18.

Carolyn L. Baburka, appellant pro se.

Manna & Bonello, attorneys for respondents Hazlet Township and Police Chief Philip Meehan (John L. Bonello, on the brief).

Chamlin, Uliano & Walsh, attorneys for respondents Hazlet Township Police Department and Police Officer Charleigh Logothetis (Andrew T. Walsh, on the brief).

PER CURIAM

Plaintiff Carolyn Baburka appeals from the May 22, 2020 Law Division orders granting summary judgment dismissal of her civil rights complaint to defendants Hazlet Township, Hazlet Township Police Department, Hazlet Township Police Chief, Philip Meehan, and Hazlet Township Police Officer, Charleigh Logothetis.[1] Plaintiff's complaint stemmed from a frisk conducted by Officer Logothetis as part of an administrative search[2] at the Hazlet Township municipal building when plaintiff was screened for weapons prior to entering

---

[1] On August 2, 2019, an order was entered granting summary judgment dismissal of the complaint to the State of New Jersey. However, that order is not challenged in this appeal.

[2] An administrative search is "a limited warrantless search of a person seeking to enter sensitive facilities" and "is lawful if 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime.'" Klarfeld v. United States, 944 F.2d 583, 586 (9th Cir. 1991) (quoting United States v. $124,570 U.S. Currency, 873 F.2d 1240, 1243 (9th Cir. 1989)).

2                                                              A-4112-19

the municipal courtroom to address her motor vehicle summonses. The frisk occurred after plaintiff triggered the metal detector situated outside the courtroom. No weapon was found on plaintiff.

On appeal, plaintiff raises the following arguments for our consideration:

> 1. THE ARGUMENT OF SUMMARY JUDGMENT BY THE COURT BELOW WAS CONTRARY TO ESTABLISHED UNITED STATES CONSTITUTIONAL LAW CONCERNING THE 4TH, 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> 2. HAZLET POLICE OFFICER LOGOTHETIS WAS NOT ENTITLED TO RECEIVE QUALIFIED IMMUNITY.
>
> 3. ALL THE DEFENDANTS WERE DELIBERATELY INDIFFERENT TO THE RIGHTS OF THE PLAINTIFFS [SIC] RIGHTS TO RECEIVE A REASONABLE [SIC] CONDUCTED SEARCH OF PLAINTIFF'S BODY, PRIOR TO PLAINTIFF ENTERING THE COURTROOM.

We reject plaintiff's contentions and affirm substantially for the reasons articulated by Judge Henry P. Butehorn in his comprehensive and well-reasoned statement of reasons accompanying the orders.

I.

We recite the facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, "giv[ing] the benefit of all

3

favorable inferences to plaintiff[]." Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

In an amended pro se complaint filed on April 24, 2019, plaintiff alleged that at approximately 4:00 p.m. on January 16, 2018,[3] she "went . . . to the Hazlet [Township] municipal building to appear for her court date" at the Hazlet Township Municipal Court. After plaintiff "proceeded through the metal detector," Logothetis, the female officer who was "monitoring the metal detector," directed plaintiff "to turn around." According to plaintiff, when she complied, instead of using a "wand,"[4] Logothetis "touched [her] extremely inappropriately," "unnecessarily squeez[ing her] breasts . . . hard."

In the complaint, plaintiff alleged that although she "lawfully submitted to a search," she was subjected to an unreasonably "harsh search" that caused her "excruciating pain," "emotionally and mentally traumatized [her,]" and

---

[3] On April 5, 2018, plaintiff served a timely Notice of Tort Claim upon the State as required by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:8-8, requiring the filing of a notice of claim within ninety days of the accrual of the cause of action against a public entity or employee unless the claimant demonstrates good cause to justify a late filing.

[4] A wand is a common name for "a hand-held magnetometer." Klarfeld, 944 F.2d at 586.

violated her constitutional rights. She asserted the Township and Chief Meehan breached their duty "to provide an appropriate security monitor[] with a wand," "provide a proper means for frisking individuals without violating a . . . woman's space," or "otherwise furnish adequate and proper warnings to invitees" and members of the public entering the premises.

The complaint also alleged that Hazlet Township and Hazlet Township Police Department failed "to properly train . . . Logothetis." Additionally, the complaint asserted that "[t]he [d]eprivation of [plaintiff's c]onstitutional rights occurred pursuant to governmental custom, policy, statement, ordinance, regulation and decision officially adopted and promulgated by governmental officials," and "[t]he inaction of [Hazlet Township] rose to the level of deliberate indifference."

Plaintiff alleged defendants' actions caused her to suffer severe physical injuries and mental trauma that will continue throughout her lifetime. Plaintiff sought $5 million in damages against defendants, "individually" and "jointly," for her losses. Attached to plaintiff's complaint was a medical note prepared by a nurse during a January 17, 2018 office visit. The note indicated that plaintiff complained of breast and chest "pain and discomfort" from being "frisked while going through [a] courthouse metal detector." The physical examination

revealed "tenderness on palpation of right lateral breast tissue and intercostal area" and "axillary tenderness." The diagnosis noted "[b]reast pain, right; [c]hest wall tenderness; [a]nxiety." X-rays of plaintiff's chest and right ribs conducted on the same date reported no "significant findings."

During the discovery period, plaintiff failed to submit any expert evidence to support her claim for psychological and physical damages. Plaintiff was cleared to return to work on January 19, 2018. Subsequently, on February 8, 2018, when plaintiff followed up with the same nurse she had visited on January 17, 2018, the nurse concluded that there were "no long[-]term effects from the right upper arm and chest wall pain, which has resolved at this time." Additionally, plaintiff underwent a bilateral breast ultrasound on February 13, 2020, and submitted bills evidencing multiple visits to a licensed clinical social worker for psychotherapy. However, no reports were provided.

In her answers to interrogatories, plaintiff reiterated that although she "consented to a reasonable search of [her] body for weapons," Officer Logothetis "failed to ask [her] if [she] had any item that could have set off the metal detector," "failed to . . . request that [she] pass through the metal detector again," and "possessed no wand." Instead, Logothetis "immediately requested that [she] . . . turn around" and proceeded to "squeeze[ her] breasts."

6

Through Chief Meehan's and Officer Logothetis's answers to interrogatories, it was revealed that Logothetis had been a Hazlet Township police officer since August 2013, and underwent basic training at the Cape May County Police Academy from August 2013 to January 2014, as well as twelve weeks of field training that included conducting frisks. Although Logothetis had no specific recollection of the event, she acknowledged being assigned to work the security detail for the Hazlet Township Municipal Court on January 16, 2018, and being positioned outside the courtroom to conduct screenings for weapons prior to people entering the courtroom. The police department provided security for the municipal courtroom in accordance with directives issued by the Administrative Office of the Courts and the Attorney General's Office. See Administrative Directive #15-06, "Statewide Municipal Court Security Policy" (Aug. 7, 2006) (requiring municipal courts to submit security plans to the Assignment Judge of the vicinage); Hazlet Township Police Department Policy and Procedures, "Municipal Court Security" (May 10, 2018) (codifying departmental policy and procedure in providing security for the municipal court).

According to Officer Logothetis, there was a metal detector in the foyer of the municipal building and posted signs stating that "All Persons Entering the

Courtroom Are Subject to Search for Weapons." Ordinarily, when a person activates the metal detector, the person can pass through the detector again, be screened using a hand-held metal detector, or frisked. Prior to a frisk, Logothetis generally advises the individual that she is going to conduct a quick pat down to search for weapons and instructs the individual to face the other way with arms extended. When frisking a woman, consistent with her training, Logothetis feels for weapons under the arms, below the bra strap, and sweeps up and down the legs.

On average, Officer Logothetis conducted approximately one frisk at each court session. Logothetis denied ever touching anyone "extremely inappropriately" or "unnecessarily squeez[ing]" anyone's breasts. Prior to plaintiff's complaint, Logothetis never received any complaints regarding her frisks, and only became aware of plaintiff's complaint when she was notified by the Internal Affairs Unit (IA) that an investigation into plaintiff's complaint was underway. The IA investigation determined that the allegations were unfounded.

8

The discovery period ended on March 30, 2020.  Over thirty days prior to the June 8, 2020 trial date, defendants moved for summary judgment.[5]  In support, the Police Department and Officer Logothetis relied in part on a January 16, 2018 video of the security checkpoint outside the municipal courtroom depicting the incident.

Plaintiff opposed the summary judgment motion on the ground that there were disputed material facts, and specifically objected to defendants' reliance on the video.  In a supporting certification, plaintiff stated that although there was a sign indicating that there would be a search for weapons, there was no sign indicating that the search would be videotaped and plaintiff "never gave any informed consent for the making of the video."[6]  Plaintiff also objected to the late disclosure of the video, stating that it was not provided to her until February 10, 2020, more than two years after it was supposedly made.  Plaintiff "suspect[ed] that the video was either edited and/or altered" due to "the long delay in its presentation and the failure of any of the [d]efendant[s] . . . to submit

---

[5]  An earlier motion for summary judgment filed by defendants was "[d]enied without prejudice . . . to allow for discovery."

[6]  In her Notice of Tort Claim, plaintiff responded to the question requesting the identification of witnesses to the occurrence by indicating that "cameras" were "onsite."

an affidavit or certification that the video was not altered and/or edited in any respects."

On May 22, 2020, Judge Butehorn conducted oral argument on the motions. On the same date, the judge entered orders granting defendants summary judgment. In the accompanying statement of reasons, after recounting the parties' respective positions and applying the governing legal principles, including viewing the evidence in the light most favorable to plaintiff,[7] the judge determined that based on the undisputed material facts, defendants were entitled to summary judgment as a matter of law.

Preliminarily, the judge noted that he "did not view or consider [the] video" or "any outline of the events purportedly depicted therein as part of []his decision." The judge agreed with plaintiff that defendants failed to submit "as part of the initial moving papers" any evidence indicating the video's "authenticity."

---

[7] The judge noted that despite plaintiff's noncompliance with Rule 4:46-2(b), requiring a conforming "responding statement" of material facts "together with citations to the motion record," instead of "disregarding plaintiff's submission and granting the motions solely upon defendants' submissions," he accorded plaintiff "leniency" given the fact that she was "self-represented." Thus, the judge considered "the substance of her submission" as "disput[ing] certain factual allegations" in defendants' "statement of material facts."

Next, the judge explained that although not specifically identified in the complaint, plaintiff seemed "to assert a claim under the Federal Civil Rights Act (42 U.S.C. [§] 1983), or the New Jersey Civil Rights Act[, N.J.S.A. 10:6-1 to -2]" (CRA) as well as "claims of negligence . . . subject to the New Jersey Tort Claims Act [(TCA), N.J.S.A. 59:1-1 to 12-3]." Further, "[a]lthough unclear," the judge deciphered plaintiff's claims as challenging both the type of search performed, namely, a frisk, as well as the manner in which the search was conducted.

Addressing liability under the TCA, the judge acknowledged the statutory immunity afforded under N.J.S.A. 59:3-3 when a public employee acts in good faith in the execution or enforcement of any law. See N.J.S.A. 59:3-3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law."). According to the judge, assessing good faith involved considering "whether the employee's conduct [was] objectively reasonable under the circumstances." See Bombace v. Newark, 125 N.J. 361, 374 (1991) (noting that good faith for purposes of immunity under N.J.S.A. 59:3-3 applies "if the public employee can show either objective or subjective good faith" and defining objective good faith as the objective reasonableness of the conduct in the circumstances).

11

The judge pointed out that plaintiff "consented to a search prior to entering the municipal court," "admit[ted] the [metal] detector went off" when she "walk[ed] through [it]," and "consent[ed] to a further search in light of the detector going off." Further, it was undisputed that "municipal police departments, through their officers, provide[d] security for municipal courts and, as part thereof, the officers [were] executing the law." Other than objecting to the type of search performed, the judge determined that plaintiff could not "point to any facts upon which it might be found that Officer Logothetis was not executing the law" in good faith.

The judge explained:

> In this case the court finds the decision to frisk plaintiff objectively reasonable under the circumstances. The plaintiff admits she triggered the metal detector when entering the municipal court. Any objective person would find a further search reasonable; plaintiff admits as much. Moreover, there are different forms of further searches; one might be asked to walk through the detector again. The other forms might include, as plaintiff suggests a "wand;" another form of electronic or non-touching search. However, considering the detector [was] already triggered it is objectively reasonable to undertake a different form of search.
>
> In addition, Logothetis is the first line of security for people coming into the public courthouse. . . . The first detector was triggered upon plaintiff walking through it and it is objectively reasonable for the officer

in this case to have determined a further search was required and to perform it through a different means than that already triggered as a follow up.

Therefore, the court finds N.J.S.A. 59:3-3 provides Officer Logothetis immunity from any tort claim against her for selecting to frisk plaintiff rather than a different form of follow up search. Similarly, the public entity defendants . . . cannot be liable on this claim. N.J.S.A. 59:2-2(b).[8] Nor is there a basis upon which to hold the Chief liable.

Specifically addressing plaintiff's tort claim against the Chief, the Police Department, and the Township, the judge stated:

[P]laintiff's claims as outlined in her complaint are a failure to provide appropriate security, failure to provide warnings for those entering the premises, and a failure to provide proper means of frisking entrants to the municipal courts. However, plaintiff cannot point to any evidence in support of same as against those defendants. There is no evidence of any potential incidents, or issues, regarding screenings or security at the municipal court. The only evidence in this case would be as to plaintiff's screening in particular. There is no evidence upon which a jury might find the security was inappropriate or insufficient. Plaintiff may take issue with the way her screening was handled, however that is not a basis to sustain a claim for failure to have generally appropriate security.

The same is true as to a claim for failure to provide warnings or failure to provide proper frisking

---

8 See N.J.S.A. 59:2-2(b) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.").

of entrants. That is, there is no evidence regarding any incidents or issues other than plaintiff's assertions regarding her entry alone. As to the claim against the Chief for failure to supervise, that is based upon – as the allegation is put in the complaint - overlooking what took place after the fact. There is no evidence to support a claim against him upon a failure to act (or an act) prior to the frisk at issue.

Addressing liability for negligence based on "the manner in which the frisk was executed," the judge reasoned that "issues of proximate cause and damages under the TCA" barred plaintiff's claims. The judge stated that to sustain a claim under the TCA, plaintiff must establish "a causal nexus" between "the claimed tortious conduct" and her injuries by "objective, credible medical evidence." See Mack v. Passaic Valley Water Comm'n, 294 N.J. Super. 592, 598 (App. Div. 1996) (explaining that in TCA cases "the critical question is whether plaintiff has presented objective and credible medical evidence, if believed by a factfinder, of a permanent loss of bodily function"). Although plaintiff "identified certain medical providers" and provided some medical records, the judge pointed out that "plaintiff has not served an expert report" and "the medical records/documents" provided "do not make any correlation . . . to the events of January 16, 2018." Thus, in the absence of objective and credible medical evidence, plaintiff cannot "sustain a claim based in tort under the TCA."

Furthermore, according to the judge, plaintiff's evidence was insufficient to satisfy the $3600 minimum for damages required under the TCA for pain and suffering resulting from an injury, failed to satisfy the two-pronged standard to vault the pain and suffering threshold under the TCA, and failed to prove psychological trauma accompanied by or resulting in physical symptoms to meet the requirements of the TCA. See N.J.S.A. 59:9-2(d) ("No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury" except "in cases of permanent loss of a bodily function . . . where the medical treatment expenses are in excess of [$3600]."); Gilhooley v. Cnty. of Union, 164 N.J. 533, 540-41 (2000) ("[I]n order to vault the pain and suffering threshold under the [TCA], a plaintiff must satisfy a two-pronged standard by proving (1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial."); Brooks v. Odom, 150 N.J. 395, 403 (1997) ("Temporary injuries, no matter how painful and debilitating, are not recoverable" and "a plaintiff may not recover under the [TCA] for mere subjective feelings of discomfort." (internal quotations omitted)).

Turning to the civil rights claim, Judge Butehorn was guided by Filgueiras v. Newark Pub. Sch., where this court explained that "[t]he elements of a

15

substantive due process claim under the CRA are the same as those under § 1983." 426 N.J. Super. 449, 468 (App. Div. 2012). In Filgueiras, we held that in order to establish a claim under either § 1983 or the CRA, "the first task . . . is to identify the state actor, the person acting under color of law, that has caused the alleged deprivation." Ibid. (alteration in original) (citations and quotation marks omitted). "The second task is to identify a right, privilege or immunity secured to the claimant by the Constitution or other federal laws of the United States." Ibid. (citations and quotation marks omitted).

Judge Butehorn explained that as to the second element, "plaintiff cannot identify a specific constitutional violation for the Officer's decision to frisk her rather than [conduct] another form of search." As to the manner in which the frisk was conducted, the judge explained that such a claim was one "for excessive force in violation of the Fourth Amendment to the United States Constitution" and was "properly analyzed under the Fourth Amendment's 'objective reasonable' standard, rather than under a substantive due process standard." See Graham v. Connor, 490 U.S. 386, 388 (1989) (holding that a "citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" was

16

"properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard").

Applying that standard, Judge Butehorn determined that "the frisk was objectively reasonable." In support, the judge noted that "plaintiff made no complaints of the force or discomfort at the time of the frisk," and there was "a lack of any evidence causally relating any medical care or treatment to the frisk." See Gilles v. Davis, 427 F.3d 197, 208 (3d Cir. 2005) (holding "the facts alleged constitute[d] insufficient evidence as a matter of law for excessive force by handcuffing" to sustain a civil rights action for damages under § 1983 based on the plaintiff's failure to demonstrate or express "signs of discomfort at the time he was handcuffed" or "seek . . . medical treatment after the fact").

Additionally, considering the totality of the surrounding circumstances, including the fact that "plaintiff went through the metal detector and triggered its alarm" and the necessity for determining whether "there were any impermissible, and potentially dangerous, object[s] being brought into the courtroom" that were secreted on plaintiff's person, the judge found that "the frisk . . . satisfie[d] the objectively reasonable standard under the Fourth Amendment such that plaintiff cannot sustain a claim under the Federal Civil Rights Act." Further, according to the judge, for the same reasons, plaintiff's

17

claim against Officer Logothetis under the CRA failed as a matter of law because "qualified immunity is an affirmative defense and would be applicable based upon the objectively reasonable basis" for the frisk. See Brown v. State, 230 N.J. 84, 97-98 (2017) (explaining that in suits brought under the CRA, "[t]he affirmative defense of qualified immunity protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015))).

Regarding liability by "the entity defendants" under § 1983 or the CRA, the judge noted that although a local government entity could be held liable under limited circumstances "for the deprivation of constitutional rights by its employees or officers," such circumstances did not exist here. See Stomel v. City of Camden, 192 N.J. 137, 145-46 (2007) (explaining that "a municipality generally cannot be held liable in a § 1983 action for the acts of employees under the principle of respondeat superior" unless "an official municipal 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,' is the cause of the constitutional

deprivation" (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978))).

Finding "no evidence to support any claim against the municipal entities," the judge explained:

> [t]here is no evidence on the record to state the Hazlet Police Department or Hazlet Township implemented a policy, ordinance, regulation, or any of the sort to promote unreasonable searches. Even when viewing [the] evidence in [the] light most favorable to . . . plaintiff, there is no dispute of fact which should be submitted as a jury question. The plaintiff does not point to any policy, nor does she cite any ordinance which could possibly lead to a jury question of whether [the] Police Department and Hazlet Township officially adopted an unconstitutional policy. Without more evidence, summary judgment should be granted for the Police Department and Hazlet Township.

Further,

> [t]here is no evidence to show the officer's decision – or the manner in which she carried out the frisk – was sanction[ed] or ordered by the municipal entities. There is no evidence of any policy, either formally or informally, adopted by them as to the decision by Officer Logothetis <u>or</u> the manner in which she carried out the frisk. There is only plaintiff's blank allegation as put forth in her complaint. Although plaintiff states she "alleged a custom or policy," . . . an allegation alone is not sufficient.

Likewise, as to the Chief, the judge stated plaintiff cannot point to any facts that would establish a claim for "supervisor[y] liability" under the

"'recklessness or deliberate indifference' standard . . . applicable to plaintiff['s] claim" under § 1983 or the CRA. See Schneider v. Simonini, 163 N.J. 336, 373-74 (2000) (adopting a "recklessness or deliberate indifference" standard for evaluating supervisory liability under § 1983 that requires a plaintiff to "establish 'that: (1) the supervisor . . . failed to supervise the subordinate official; (2) a causal link exists between the failure to . . . supervise and the violation of the plaintiff's rights; and (3) the failure to . . . supervise amounts to deliberate indifference' or recklessness" (quoting Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir.1986))). According to the judge, there was "[n]o evidence plac[ing the Chief] at the courthouse nor being aware of the events that day." "Plaintiff makes conclusory statements, but conclusory statements are insufficient to overcome a motion for summary judgment."

## II.

In this ensuing appeal, plaintiff argues the judge erred in granting summary judgment to defendants. We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled:

> if the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the

> issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Ibid. (citations omitted) (quoting R. 4:46-2(c)).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Applying this standard, we agree with the judge's determination that there were no disputed issues of material fact and defendants were entitled to summary judgment as a matter of law. Plaintiff maintains that she was "subjected to an unreasonable search for weapons" "in violation of [42 U.S.C. § 1983.]" She asserts that the injury she suffered was the result of official policy or custom and "indifferen[ce] to providing the necessary court training to Officer Logothetis prior to the incident," exposing the municipality, the police department, and the Chief to liability under § 1983. She further contends that "Officer Logothetis was not entitled to qualified immunity" at the summary

judgment stage given the material disputed facts surrounding "the reasonableness component" of the search.

However, our Supreme Court has recognized that in cases involving § 1983 claims, the "doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties" unless their performance was not "objectively reasonable." Morillo, 222 N.J. at 107-08. Determining whether the conduct was objectively reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. "The inquiry requires analyzing the totality of the circumstances." Plumhoff v. Rickard, 572 U.S. 765, 774 (2014).

Here, we agree with the judge that based on the evidence in the record, Officer Logothetis's conduct was objectively reasonable, and plaintiff failed to point to any facts that dictated otherwise. Moreover, contrary to plaintiff's contention, this reasonableness determination obviated a finding of "willful misconduct" to vitiate immunity under the TCA. See N.J.S.A. 59:3-14 (providing an exception to immunity for public employees under the TCA where

a public official's conduct "was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct").

We also reject plaintiff's contention that neither the township nor the police department were entitled to summary judgment. "A local governmental entity is deemed a 'person' under [§] 1983 only where the action alleged to be unconstitutional 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Bayer v. Twp. of Union, 414 N.J. Super. 238, 270 (App. Div. 2010) (quoting Monell, 436 U.S. at 690). "It is not, however, liable for the actions of its employees solely on a theory of respondeat superior." Ibid. "It is only when 'execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.'" Ibid. (quoting Monell, 436 U.S. at 694).

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious'

choice by a municipality . . . can a city be liable for such failure under § 1983." Id. at 389. To survive summary judgment on a failure to train theory, a plaintiff "must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001).

Here, we agree with the judge that plaintiff failed to present any evidence to support a failure to train theory and her conclusory statements are inadequate to defeat summary judgment. "Bare conclusory assertions, without factual support in the record, will not defeat a meritorious application for summary judgment." Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012); accord Puder v. Buechel, 183 N.J. 428, 440-41 (2005) ("[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the [summary judgment] motion."). "The opponent must 'come forward with evidence' that creates a genuine issue of material fact." Horizon Blue Cross Blue Shield of N.J., 425 N.J. Super. at 32 (quoting Brill, 142 N.J. at 529). Plaintiff failed to do that here.

Likewise, to the extent plaintiff appears to assert claims of negligent supervision and failure to investigate on the part of the Chief, such claims also

fail. The deliberate indifference test also applies to claims of "negligent supervision and failure to investigate." Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)).

To sustain a claim under those theories, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a 'relationship between the "identified deficiency" and the "ultimate injury."'" Brown, 269 F.3d at 216. To that end, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Here, plaintiff has failed to establish the requisite elements. Plaintiff failed to present evidence of any complaints other than her own, and failed to point to any facts to indicate that the Chief was even aware of plaintiff's encounter with Officer Logothetis on the date in question.[9] See Schneider, 163 N.J. at 373-74 ("The knowledge

_____

[9] A claim of supervisory liability may also be predicated on the supervisor "participat[ing] in violating the plaintiff's rights, direct[ing] others to violate

element of a plaintiff's case requires proof that the supervisor was aware of facts from which an inference could be drawn that the subordinate was acting in an unconstitutional manner that carried a substantial risk of causing serious harm.")

We also reject plaintiff's puzzling claim that she "was greatly prejudiced" by the late production of the video depicting the search. First, at her request, the judge did not consider the video in making his decision. Second, plaintiff's claim of surprise is belied by her acknowledgement in her Notice of Claim that there were cameras onsite recording the encounter.[10]

---

them, or, as the person in charge, ha[ving] knowledge of and acquiesc[ing] in [the] subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). The record does not support a finding of liability on this basis either.

[10] The judge correctly rejected plaintiff's apparent claim, reiterated on appeal, that her failure to consent to a video recording of her entering the municipal courtroom constituted yet another constitutional violation. The judge noted that the claim was "not part of her complaint . . . nor a basis for her allegations." Moreover, according to the judge, "there is no viable cause of action against any of the defendants" based upon them "recording those at the entrance, or within the public areas of the municipal court building" nor "is there a potential claim based upon the lack of a sign indicating [same]." See Tarus v. Borough of Pine Hill, 189 N.J. 497, 512 (2007) (condoning "videotaping of public proceedings" and acknowledging that "[t]he broad and pervasive use of video cameras at public events evidences a societal acceptance of their use in public fora"); see also Key v. Compass Bank, Inc., 826 So. 2d 159, 165 (Ala. Civ. App. 2001) ("Normally, there is no liability for photographing a person in a public place.").

A-4112-19

To the extent we have not specifically addressed plaintiff's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4112-19